KILPATRICK STOCKTON LLP
JOSEPH PETERSEN (*pro hac vice* application to be submitted)
GREGORY M. JACOBS. Cal. Bar No. 263154
31 West 52nd Street. 14th Floor
New York. New York 10019
Telephone: (212) 775-8700; Fax: (212) 775-8815
E-mail: jpetersen@kilpatrickstockton.com
      gjacobs@kilpatrickstockton.com
   Attorneys for Defendant AT&T MOBILITY, LLC

MUNGER TOLLES & OLSON LLP
KELLY M. KLAUS, Cal. Bar No. 161091
355 South Grand Avenue, 35th Floor
Los Angeles California 90071-1560
Telephone: (213) 683-9100; Fax: (213) 683-4038
E-mail: kelly.klaus@mto.com
   Attorneys for Defendant VERIZON WIRELESS TELECOM, INC.

SHEPPARD MULLIN RICHTER & HAMPTON LLP
KENT R. RAYGOR, Cal. Bar No. 117224
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Telephone: (310) 228-3700; Fax: (310) 228-3701
E-mail: kraygor@sheppardmullin.com
   Attorneys for Defendant SPRINT SPECTRUM LP

WILEY REIN LLP
BRUCE G. JOSEPH (*pro hac vice* application to be submitted)
ANTHONY H. SON, Cal. Bar No. 190478
1776 K Street NW
Washington, D.C. 20006
Telephone: (202) 719-7258; Fax: (202) 719-7049
E-mail: bjoseph@wileyrein.com; ason@wileyrein.com
   Attorneys for Defendant T-MOBILE USA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| LUVDARTS LLC, a California limited liability company; and DAVIS-REUSS, INC. dba DigiPie, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY, LLC; a Delaware limited liability company; VERIZON WIRELESS TELECOM, INC., a Delaware corporation; SPRINT NEXTEL CORPORATION, a Kansas for profit corporation; T-MOBILE USA, INC., a Delaware corporation, | Case No. CV 10-5442 DDP (RZx)<br><br>**(1) NOTICE OF MOTION AND MOTION OF ALL DEFENDANTS TO DISMISS THIS ACTION IN ITS ENTIRETY [FED. R. CIV. P. 12(b)(6)]; AND**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**<br><br>Hearing<br>Date:        November 22, 2010 |

|   |   |
|---|---|
| Defendants. | Time: 10:00 a.m.<br>Courtroom: 3 (Spring Street)<br><br>Complaint filed: July 23, 2010 |

TO THE ABOVE-CAPTIONED COURT AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Monday, November 22, 2010, at 10:00 a.m., or as soon as possible thereafter as counsel can be heard in Courtroom 3 of the United States Courthouse, 312 North Spring Street, Los Angeles, California 90012, the Honorable Dean D. Pregerson presiding, defendants AT&T Mobility, LLC ("**AT&T**"), Verizon Wireless Telecom, Inc. ("**Verizon**"), Sprint Spectrum LP ("**Sprint**"),[1] and T-Mobile USA, Inc. ("**T-Mobile**") (collectively, "**the Carriers**") will and hereby do move for an order dismissing Plaintiffs' Complaint in its entirety, without leave to amend.

This motion is made on the ground that none of the purported claims for relief asserted in Plaintiffs' Complaint states a claim upon which relief can be granted. Therefore, the Carriers ask that Plaintiffs' Complaint be dismissed in its entirety pursuant to FED. R. CIV. P. 12(b)(6).

This Motion is based upon this Notice, the attached Memorandum Of Points And Authorities, the concurrently filed Request For Judicial Notice, all pleadings and other documents concerning this matter contained in the Court's file, those matters of which this Court may take judicial notice, and such further evidence and oral argument as may be presented at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to C.D. CAL. LOCAL RULE 7-3 that took place on October 14, 2010.

---

[1] Erroneously sued as "Sprint Nextel Corporation."

Dated: October 20, 2010

KILPATRICK STOCKTON LLP
JOSEPH PETERSEN (*pro hac vice* application to be submitted)
GREGORY M. JACOBS, Cal. Bar No. 263154

By _____*s/ Gregory M. Jacobs*_____
GREGORY M. JACOBS
Attorneys for Defendant AT&T MOBILITY, LLC

Dated: October 20, 2010

MUNGER TOLLES & OLSON LLP
KELLY M. KLAUS, Cal. Bar No. 161091

By _____*s/ Kelly M. Klaus*_____
KELLY M. KLAUS
Attorneys for Defendant
VERIZON WIRELESS TELECOM, INC.

Dated: October 20, 2010

SHEPPARD MULLIN RICHTER & HAMPTON LLP
KENT R. RAYGOR
FRED R. PUGLISI

By _____*s/ Kent R. Raygor*_____
KENT R. RAYGOR
Attorneys for Defendant SPRINT SPECTRUM LP

Dated: October 20, 2010

WILEY REIN LLP
BRUCE G. JOSEPH (*pro hac vice* application to be submitted)
ANTHONY H. SON, Cal. Bar No. 190478

By _____*s/ Anthony H. Son*_____
ANTHONY H. SON
Attorneys for Defendant T-MOBILE USA, INC.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION AND SUMMARY ..................................................... 1

FACTUAL BACKGROUND ............................................................. 2

    A.    Multimedia Messaging Service ("MMS"). ............................... 2

    B.    Plaintiffs' Business. ........................................................ 2

    C.    Plaintiffs' Copyright Registration And Application. .................. 4

    D.    Plaintiffs' Complaint. ..................................................... 5

I.    PLAINTIFFS DO NOT HAVE VALID COPYRIGHT APPLICATIONS OR REGISTRATIONS FOR THE ALLEGEDLY INFRINGED WORKS, WHICH, IN AND OF ITSELF, REQUIRES DISMISSAL. .............. 6

    A.    Plaintiffs' "Catalogs" Do Not Qualify For Group Registration. ............. 7

    B.    The 2008 - 2009 Registration Is Invalid Because The Application Fails To Satisfy The Requirements For A "Single Unpublished Collection" ........................................................ 7

    C.    The 2010 Application Is Invalid Because The Covered Elements Were Not Included In A "Single Unit of Publication" ................... 9

II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE FACTS ESSENTIAL TO A CLAIM FOR COPYRIGHT INFRINGEMENT UNDER ANY THEORY OF LIABILITY. ................... 9

    A.    The Complaint Should Be Dismissed Because Plaintiffs Have Failed To Allege Particular Acts Of Infringement Of Particular Copyrighted Works By Particular Carriers. ............................ 10

    B.    The Complaint Should Be Dismissed Because It Fails To Identify Any Conduct By Anyone That Would Support A Claim For Either Direct Copyright Infringement Or Secondary Liability For Another's Infringement. ................................................ 13

        1.    The Complaint fails to state a claim of direct copyright infringement because it does not and cannot allege that the Carriers themselves did any act that violates an exclusive

right of Plaintiffs as copyright owners. ........................................ 14

2. The Complaint fails to state a claim of secondary liability for copyright infringement because it does not and cannot allege that anyone engaged in direct infringement and fails to allege additional essential elements for secondary liability. ......................................................................................... 18

a. Plaintiffs fail to allege direct infringement by any third party for which the Carriers may be liable. ............... 19

b. Plaintiffs fail to allege an additional essential element of vicarious copyright liability. ......................................... 20

III. PLAINTIFFS' CLAIM FOR "CONSTRUCTIVE TRUST/ACCOUNTING" SHOULD BE DISMISSED BECAUSE IT IDENTIFIES A REMEDY, NOT AN INDEPENDENT CLAIM, AND IN ANY EVENT IS PREEMPTED BY THE COPYRIGHT ACT. ................ 22

CONCLUSION.................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Federal Cases</u>

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ...........................................................................19

*Adobe Systems Inc. v. Canus Prodn's, Inc.*,
  173 F. Supp. 1044 (C.D. Cal. 2001) (Pregerson, J.) ...........................................21

*Ashcroft v. Iqbal*,
  __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ....................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ....................10, 11, 21

*Bespaq Corp. v. Haoshen Trading Co.*,
  Case No. 04-3698, 2005 WL 14841 (N.D. Cal. Jan. 3, 2005) ...........................11

*Brown v. S. Fla. Fishing Extreme, Inc.*,
  No. 08-20678, 2008 WL 2597938 (S.D. Fla. June 27, 2008) ..............................6

*Cable News Network, Inc. v. CSC Holdings, Inc.*,
  __ U.S. __, 129 S. Ct. 2890, 174 L. Ed. 2d 595 (2009)…………………………14

*Cartoon Network LP v. CSC Holdings, Inc.*,
  536 F.3d 121 (2d Cir. 2008) ...................................................................14, 17, 18

*Cipes v. Mikasa, Inc.*,
  346 F. Supp. 2d 371 (D. Mass. 2004)...................................................................8

*Cosmetic Ideas, Inc. v. IAC/InteractiveCorp*,
  606 F.3d 612 (9th Cir. 2010) ................................................................................6

*CoStar Group, Inc. v. Loopnet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) ...................................................................13, 14, 17

*Determined Prods., Inc. v. Koster*,
  No. 92-1697, 1993 WL 120463 (N.D. Cal. Apr. 13, 1993) ................................8

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
  423 F. Supp. 2d 173 (S.D.N.Y. 2006) ..................................................................3

*Ellison v. Robertson*,
 189 F. Supp. 2d 1051 (C.D. Cal. 2002), *rev'd in part on other grounds*,
 357 F.3d 1072 (9th Cir. 2004) ............................................................. 16

*Ellison v. Robertson*,
 357 F.3d 1072 (9th Cir. 2004) ..................................................... 14, 16

*Falcon Enters., Inc. v. Nobel Devs., Inc.*,
 Case No. 06-1404, 2007 WL 737347 (W.D. Wash. Mar. 5, 2007) .................. 24

*Field v. Google Inc.*,
 412 F. Supp. 2d 1106 (D. Nev. 2006) ..................................................... 16

*Four Navy Seals v. Associated Press*,
 413 F. Supp. 2d 1136 (S.D. Cal. 2005) ................................................... 11

*Gee v. CBS, Inc.*,
 471 F. Supp. 600 (E.D. Pa. 1979), *aff'd*, 612 F.2d 572 (3d Cir. 1979) ............. 11

*Granse v. Brown Photo Co.*,
 No. 3-80-338, 1985 WL 26033 (D. Minn. July 1, 1985) ................................... 8

*Grundberg v. Upjohn Co.*,
 137 F.R.D. 372 (D. Utah 1991) ......................................................... 7, 8

*Home Design Servs., Inc. v. David Weekley Homes, LLC*,
 Case No. 06- 350, 2007 WL 1080001, 2007 Copr. L. Dec. (CCH)
 ¶ 29,356 (M.D. Fla. Apr. 9, 2007) ....................................................... 12

*Kay Berry, Inc. v. Taylor Gifts, Inc.*,
 421 F.3d 199 (3d Cir. 2005) ............................................................ 7, 9

*Kenneally v. Bank of Nova Scotia*,
 Case No. 09- 2039, __ F. Supp. 2d __, 2010 WL 1734955
 (S.D. Cal. Apr. 28, 2010) ............................................................... 22

*Kodadek v. MTV Networks, Inc.*,
 152 F.3d 1209 (9th Cir. 1998) ........................................................... 23

*L.A. Printex Indus., Inc. v. Aeropostale*,
 No. 08-07085, 2010 WL 2813800 (C.D. Cal. May 5, 2010)
 (Pregerson, J.) ...................................................................... 6, 7, 9

*Laws v. Sony Music Entertainment*,
    448 F.3d 1134 (9th Cir. 2006) ........................................................... 23

*Livnat v. Lavi*,
    Case No. 96 CIV. 4967, 1997 WL 563799, 44 U.S.P.Q.2d (BNA)
    1379 (S.D.N.Y. 1997) ......................................................................... 12

*Mack v. S. Bay Beer Distribs., Inc.*,
    798 F.2d 1279 (9th Cir. 1986) ............................................................. 6

*Matthew Bender & Co., Inc. v. West Publ'g Co.*,
    158 F.3d 693 (2d Cir. 1998) ............................................................... 19

*McCoy v. Scantlin*,
    Case No. 04-371, 2004 WL 5502111 (C.D. Cal. June 1, 2004) ........ 22

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ............................................................. 11

*Motown Record Corp. v. George A. Hormel & Co.*,
    657 F. Supp. 1236 (C.D. Cal. 1987) .................................................. 24

*Parker v. Google, Inc.*,
    422 F. Supp. 2d 492 (E.D. Pa. 2006) ................................................ 16

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ............................................................... 6

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) .............................................. 14, 19, 21

*Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*,
    494 F.3d 788 (9th Cir. 2007) .................................................... 21, 22

*Plunket v. Doyle*,
    Case No. 99 CIV. 11006, 2001 WL 175252, 2001 Copr. L. Dec. (CCH)
    ¶ 28,237 (S.D.N.Y. 2001) ................................................................. 11

*Religious Technology Center v. Netcom On-Line Commc'n Servs., Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ...................................... 15, 16, 17

*Saregama India Ltd. v. Young*,
    Case No. 02-9856, 2003 WL 25769784 (C.D. Cal. Mar. 11, 2003) ........ 5

*Sega Enters. Ltd. v. MAPHIA*,
    948 F. Supp. 923 (N.D. Cal. 1996)................................................................16

*Sega Enters. Ltd. v. Sabella*,
    No. C 93-04260 CW, 1996 WL 780560, 1997 Copr. L. Dec. (CCH)
    ¶ 27,648 (N.D. Cal. Dec. 18, 1996)..........................................................16

*Sony Corp. v. Universal City Studios, Inc.*,
    464 U.S. 417, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984) ...........................14

*Taylor v. IBM*,
    54 F. Appx. 794, 2002 WL 31845220 (5th Cir. 2002)..............................12

**State Cases**

*Stansfield v. Starkey*,
    220 Cal. App. 3d 59 (1990) .......................................................................22

**Federal Statutes, Rules, And Regulations**

37 C.F.R § 202.3(b)(4)-(10). .............................................................................6

37 C.F.R. § 202.3(b)(4)(i)(A)-(B) .....................................................................7

37 C.F.R. § 202.3(b)(5)-(10) .............................................................................7

17 U.S.C. § 106.................................................................................10, 13, 15, 16

17 U.S.C. § 115........................................................................................................4

17 U.S.C. § 301(a) .............................................................................................23

17 U.S.C. § 412.......................................................................................................5

17 U.S.C. § 512.......................................................................................................5

FED. R. CIV. P. 8(a)(2) ......................................................................................10

FED. R. CIV. P. 12(b)(6).................................................................................1, 6

FED. R. EVID. 201(b) ..........................................................................................3

Copyright Royalty Board, MECHANICAL AND DIGITAL PHONORECORD DELIVERY RATE
DETERMINATION: FINAL RULE, 74 Fed. Reg. 4510, 4512-13 (Jan. 26, 2009)............4

**Other Authorities**

Daniel Ralph and Paul Graham, MMS: TECHNOLOGIES, USAGE AND BUSINESS MODELS 36 (John Wiley and Sons 2004) ................................................................. 2

# MEMORANDUM OF POINTS AND AUTHORITIES
## INTRODUCTION AND SUMMARY

Plaintiffs allege that the defendant wireless carriers are liable for copyright infringement because their customers use multimedia messaging service ("**MMS**") networks to send one another "Luvdarts"—Plaintiffs' products whose <u>entire purpose</u> is to be distributed over those same MMS networks. The idea that there is any copyright infringement in simply providing the network that is Plaintiffs' intended (and exclusive) channel of distribution is a glaring flaw in Plaintiffs' Complaint, but it is hardly the only one. The Complaint is manifestly deficient on multiple grounds, any one of which requires dismissal under Rule 12(b)(6).

*First*, Plaintiffs have neither a valid copyright registration nor a valid copyright application, and therefore cannot sue for copyright infringement. *Second*, Plaintiffs' Complaint fails to identify the specific copyrighted works that were allegedly infringed by each Carrier or how and when they allegedly were infringed. *Third*, Plaintiffs have failed to plead any volitional conduct by the Carriers beyond creating and operating a general purpose communications network, which cannot, of itself, give rise to liability for direct copyright infringement. *Fourth,* the Carriers cannot be held liable under claims of secondary liability because a finding of secondary liability requires a finding of direct infringement by a third party and here the Complaint is devoid of any allegation of direct infringement by any third party. *Fifth*, Plaintiffs' Complaint is devoid of any allegation that the Carriers have the right and ability to control the allegedly infringing conduct, which is a necessary element of vicarious liability. *Sixth*, Plaintiffs' "claim" for "Constructive Trust/Accounting" is not a claim at all, but a remedy, and, in any event, is preempted by the Copyright Act. Thus, as discussed in more detail below, Plaintiffs' Complaint should be dismissed in its entirety, and, because Plaintiffs are incapable of curing these defects, without leave to amend.

## FACTUAL BACKGROUND

### A.    Multimedia Messaging Service ("MMS").

The Complaint alleges that the Carriers have infringed Plaintiffs' copyrights in "multimedia messaging content" that the users of wireless devices send to each other in "MMS" format over their cell phones.  [Compl. ¶¶ 13-14.][2]  "MMS" is an abbreviation for a data and device standard known as "multimedia messaging service."  "MMS" is an outgrowth of "SMS," or "short message service."  Both standards enable the end users of wireless devices to transfer data to one another across a wireless network.  As its name suggests, "SMS" is a standard for transferring relatively short messages consisting of 160 or fewer characters—popularly known as "texting."  MMS supports messages of 100 to 300 kilobytes, allowing users to send wireless messages with text, graphics, photographs, and audio and video content to other cell phone users.[3]  MMS messaging has become a widely used technology that enables wireless users to communicate with each other.

### B.    Plaintiffs' Business.

Plaintiffs allege that they formed "Luvdarts LLC" and "began to distribute their MMS content" in 2008.  [¶ 16.]  The Complaint describes "Luvdarts content" as "greeting card style messages with text, graphics, video and musical materials that are created by Luvdarts" and states that "[t]he Luvdarts content was placed on various Internet sites"—presumably by or on behalf of Plaintiffs—where it "could be downloaded for a fee and in many instances for free as an incentive to download and distribute their content."  [*Id*.]  The purchaser of the Luvdart then may send it "to whoever has the ability to receive the MMS, i.e. picture messaging."  [¶ 15.]  In short,

---

[2] Except as otherwise noted, all "¶" references are to Plaintiffs' July 23, 2010 Complaint.

[3] The background terms are described in, among other sources, Daniel Ralph and Paul Graham, MMS: TECHNOLOGIES, USAGE AND BUSINESS MODELS 36 (John Wiley and Sons 2004).

the Complaint on its face describes a product whose express purpose is to be sent from one wireless user to another using the Carriers' networks.  [¶ 15.]

Plaintiffs' website—www.luvdarts.com—confirms the obvious,[4] stating that "Luvdarts are multimedia messages (MMS) <u>created for mobile2mobilesharing.</u>" [Request for Judicial Notice ("**RJN**"), Item No. 1, Ex. 1 thereto (emphasis added).][5] It further states that users can purchase Luvdarts through third-party distributors (*e.g.*, "CNET's download.com") [RJN, Item No. 2, Ex. 2] or from Luvdarts itself [RJN, Item No. 3, Ex. 3] as part of a "Luvdarts campaign," which is a "<u>high impact</u> <u>multimedia message</u> (MMS)" directed "at a targeted audience" [RJN, Item No. 1, Ex. 1 (emphasis in original)].   Luvdarts informs campaign purchasers that "Luvdarts LLC creates MMS (multimedia messages) <u>that may be shared on mobile networks</u> . . . .  <u>We do grant the right for users of our services to share the content we create for</u> <u>them with others as desired.</u>"  [RJN, Item No. 3, Ex. 3 (emphasis added).][6]

Although Plaintiffs already make money by selling Luvdarts for distribution over MMS networks, Plaintiffs allege that they "anticipated" that they also "would realize mechanical rights income" from wireless carriers on what the Complaint calls "MMS data revenue"—*i.e.*, the fees that the Carriers charge users for sending or

---

[4] The Court may take judicial notice of Plaintiffs' factual descriptions on their own website of their products and means of distribution.  FED. R. EVID. 201(b); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." (quotations omitted)).

[5] The Carriers submit concurrently with this motion a request that this Court take judicial notice of six items.

[6] The website also features a "sample" Luvdart "birthday" greeting, featuring a "Betty Boop" cartoon clip and interspersed text messages, synchronized with pulsating music—all of which apparently is intended to convey that the recipient looks great at his or her age.  [RJN, Item No. 2, Ex. 2.]

1   receiving MMS messages.  [¶ 16.]   Plaintiffs nowhere state the legal basis for such

2   anticipation, nor do they define what they mean by "mechanical rights income."[7]

3   **C.   Plaintiffs' Copyright Registration And Application.**

4   Plaintiffs identify two alleged copyright registrations that purportedly cover

5   some or all of the hundreds of Luvdarts named in Exhibit "A" to the Complaint,

6   which Plaintiffs claim is an "exemplary list of infringed works" [¶ 23] and which

7   contains 83 pages of one-line file names (*e.g.*, "Birthday Pt 30.3g2").  [Report on the

8   Filing or Determination of an Action or Appeal Regarding Copyright (ECF No. 4);

9   *see* RJN, Item No. 4, Ex. 4.]  Only one of the applications has passed to registration—

10  the December 9, 2009 application for audiovisual works titled "3gLuvdarts Catalog I

11  2008 - 2009" (the "**2008 - 2009 Registration**").  [RJN, Item No. 5, Ex. 5.]  Although

12  Plaintiffs allege that they have distributed their Luvdarts (*i.e.*, published them) [¶¶ 16,

13  21], the 2008 - 2009 Registration is for an unpublished "collection."[8]  [RJN, Item No.

14  5, Ex. 5.]  Plaintiffs also concede that the material submitted to the Copyright Office

15  for registration included published elements [*id.* (stating that "some files previously

16  published" are excluded from the copyright claim)], yet they nowhere identify the

17  elements that constitute the registered unpublished collection.  The other

18  application—submitted on July 20, 2010 for published audiovisual elements and titled

19  "3gLuvdarts Catalog II Jan 2010 - June 2010" (the "**2010 Application**")—is still

20  pending.  [RJN, Item No. 6, Ex. 6.]

21

22

23

---

24  [7] "Mechanical rights" refer to the rights of reproduction and distribution of musical
    compositions embodied in sound recordings.  *See* Copyright Royalty Board,
25  Mechanical and Digital Phonorecord Delivery Rate Determination: Final
    Rule, 74 Fed. Reg. 4510, 4512-13 (Jan. 26, 2009).  These rights are subject to the
26  compulsory license provisions of 17 U.S.C. § 115.  Plaintiffs do not allege that their
    Complaint has anything to do with section 115 or rights in musical compositions.

27  [8] The copyright registration number for the 2008 - 2009 Catalog is PAu-3-476-804.
    The "u" is the Copyright Office's indication that the work is unpublished.

28

## D.    Plaintiffs' Complaint.

The Complaint alleges that the Carriers are liable for "enabling of the transmission and publication of" Plaintiffs' claimed copyrighted works "absent an agreement from or compensation to the copyright owners." [¶ 14.]  The only acts alleged are the Carriers' (1) "building and implementing a peer to peer file sharing network with the dedicated purpose of enabling end users to share multimedia files via this MMS network," and (2) "profit[ing] from" the transfer of files across the MMS network by "charging the transmitter and receiver a fee for the delivery of this copyrighted content." [¶ 17.]  Plaintiffs do not identify any particular infringing act by any particular Carrier of any particular copyrighted works, or any underlying act of direct infringement by a third party, nor do they explain why Luvdarts purchasers are not authorized to use that content for the purpose for which it is sold—*i.e.*, to be sent to recipients across MMS networks.[9]

---

[9] The numerous pleading defects in Plaintiffs' Complaint that are identified in this Motion are more than sufficient to warrant dismissal of Plaintiffs' Complaint; therefore, the Carriers do not herein address the many other substantive deficiencies with Plaintiffs' lawsuit.  These deficiencies include, but are not limited to:

- the effect on Plaintiffs' claims of the safe harbor provision of 17 U.S.C. § 512 for service providers of digital online communications, which exempts them from copyright infringement damages claims and limits available injunctive relief for serving as a conduit for third party communications;

- the unavailability of punitive damages under the Copyright Act (*e.g.*, *Saregama India Ltd. v. Young*, Case No. 02-9856, 2003 WL 25769784, at *1 (C.D. Cal. Mar. 11, 2003); and

- the unavailability to Plaintiffs of statutory damages or attorneys' fees based on alleged infringement of (1) unpublished works that commences prior to registration, or (2) published works that commences prior to registration unless "registration is made within three months after the first publication" (17 U.S.C. § 412).

## **ARGUMENT**

I. **PLAINTIFFS DO NOT HAVE VALID COPYRIGHT APPLICATIONS OR REGISTRATIONS FOR THE ALLEGEDLY INFRINGED WORKS, WHICH, IN AND OF ITSELF, REQUIRES DISMISSAL.**

Plaintiffs necessarily rely on their registration and pending application as an essential element of their copyright infringement claims. *See Cosmetic Ideas, Inc. v. IAC/InteractiveCorp*, 606 F.3d 612, 615 (9th Cir. 2010) (valid application or registration is a pre-condition to filing a copyright infringement claim). Thus, the Court should consider Plaintiffs' filings on this motion. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ("[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies.").[10] Plaintiffs' application and registration are invalid and cannot support Plaintiffs' infringement claims.

In order to bring viable infringement claims in this Circuit, Plaintiffs must show that the Copyright Office has received a valid application for each of the works allegedly infringed. *Cosmetic Ideas*, 606 F.3d at 615-21 (interpreting section 411(a) of the Copyright Act). Where, as here, Plaintiffs purport to register multiple elements under a single application, they may validly do so only for (1) a group registration of related works; or (2) a single work registration if the works were included in a "single unpublished collection" or, if published, a "single unit of publication." 37 C.F.R. § 202.3(b)(4)-(10); *L.A. Printex Indus., Inc. v. Aeropostale*, No. 08-07085, 2010 WL 2813800, at *4-6 (C.D. Cal. May 5, 2010) (Pregerson, J.).

---

[10] The Court may also consider the application and registration because they are public records. *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) ("[O]n a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment."); *Brown v. S. Fla. Fishing Extreme, Inc.*, No. 08-20678, 2008 WL 2597938, at *1 (S.D. Fla. June 27, 2008) (considering copyright registrations public records in connection with motion to dismiss).

In this case, Plaintiffs have identified only two purported registrations, each of which purportedly covers a "catalog" of some or all of the works listed in Exhibit "A" to their Complaint that they claim were infringed, and one of those two "registrations" has not been granted. *See supra* p. 4. As shown below, Plaintiffs' 2008 - 2009 Registration and their 2010 Application are invalid because they do not meet the prerequisites for registration of multiple works under a single application.

## A. **Plaintiffs' "Catalogs" Do Not Qualify For Group Registration.**

Audiovisual works such as those put at issue in the Complaint unquestionably do not qualify for group registration, which is permitted only for automated databases, serials, daily newspapers, contributions to periodicals, daily newsletters, and published photographs. *See* 37 C.F.R. § 202.3(b)(5)-(10); *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 204 (3d Cir. 2005) (finding registration invalid under group registration provisions because the works did not fit one of the categories enumerated by the Copyright Office); *Aeropostale*, 2010 WL 2813800, at *4 (same). Thus, Plaintiffs must satisfy the single work registration requirements. They do not.

## B. **The 2008 - 2009 Registration Is Invalid Because The Application Fails To Satisfy The Requirements For A "Single Unpublished Collection".**

Plaintiffs purport to register the "2008 - 2009 Catalog" as an unpublished collection under 37 C.F.R. § 202.3(b)(4)(i)(A)-(B). They may not do so, however, because that "Catalog" includes—by Plaintiffs' own admission—both published and unpublished elements, and Plaintiffs fail to distinguish between the two. *Grundberg v. Upjohn Co.*, 137 F.R.D. 372, 385 (D. Utah 1991) ("In order for the single collection provision to apply, all of the documents must be unpublished . . . ." (emphasis added)) (finding copyright application and registration invalid and unable to support infringement claim). In *Grundberg*, the court found a copyright registration for an unpublished collection "fatally defective" in part because some of the elements included in the collection were published. The court concluded that

where an applicant submits deposit material that contains both published and unpublished material, at a minimum, the applicant must specifically identify in its application the unpublished collection subject to the registration:

> A copyright claimant may not obtain a valid copyright certificate, and the copyright office may not effectively approve registration for such . . ., where documents sought to be copyrighted are represented to be part of a single collection . . . and <u>where the copyright application provides no reasonable or workable means for determining what documents in fact constitute the "single unpublished collection."</u>

*Id.* at 384-85 (emphasis added). Moreover, "the defect [cannot] be cured by a mere statement of intended exclusion to remove some of the documents from the application without reasonable identification of the excluded documents." *Id.* at 385.

Here, as in *Grundberg*, Plaintiffs improperly submitted to the Copyright Office a deposit constituting the allegedly registered work that includes both published and unpublished elements without any indication of which elements constitute a "single unpublished collection." [*See* RJN, Item No. 5, Ex. 5.] This fundamental registration error requires dismissal of Plaintiffs' infringement claims. *See Determined Prods., Inc. v. Koster*, No. 92-1697, 1993 WL 120463, at *1 (N.D. Cal. Apr. 13, 1993) (dismissing copyright infringement claim because "[w]rongly identifying a number of published individual works as an unpublished collection is a fundamental registration error"); *Cipes v. Mikasa, Inc.*, 346 F. Supp. 2d 371, 374 (D. Mass. 2004) ("[A] collection of works that is erroneously registered as being unpublished cannot generally be transformed to a properly registered published collection by a supplemental filing with the Copyright Office. Rather, a new registration as a published collection is required."); *Granse v. Brown Photo Co.*, No. 3-80-338, 1985 WL 26033, at *16 (D. Minn. July 1, 1985) ("Because Granse registered published works as unpublished collections, those registrations . . . are invalid.").

1  **C.    The 2010 Application Is Invalid Because The Covered**
2       **Elements Were Not Included In A "Single Unit of Publication".**

3       Plaintiffs' application to register the "2010" Catalog is similarly defective.

4  Because Plaintiffs identified these materials as published, a single work registration is

5  only available if the works were included in a "single unit of publication."  As one

6  court noted, "[t]he classic example of a single work is a board game.  The board, the

7  playing pieces, and the instructions may be individually entitled to copyright

8  protection, but since they are packaged as a <u>single unit</u> (the game itself), it is

9  appropriate to allow the copyright owner to register the entire game, and protect the

10 individual elements through that single registration."  *Kay Berry*, 421 F.3d at 205

11 (emphasis added).

12      Plaintiffs' Complaint makes clear, however, that Plaintiffs sold their "luvdarts"

13 as separate files rather than as a single unit.  [¶¶ 14-16; *see also* RJN, Item No. 1, Ex.

14 1; RJN, Item No. 3, Ex. 3.]  *See Aeropostale*, 2010 WL 2813800, at *5 (noting that

15 separate sales of works was evidence that such works "were not published, within the

16 meaning of the Copyright Act, as a <u>single unit</u>" (emphasis added)).  Plaintiffs have

17 made no allegation that the files subject to the 2010 Application were included in a

18 single unit of publication.  Accordingly, the copyright application is invalid, and

19 Plaintiffs' infringement claims for these works should be dismissed.  *See id.* at *6.

20 **II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO**
21     **ALLEGE FACTS ESSENTIAL TO A CLAIM FOR COPYRIGHT**
22     **INFRINGEMENT UNDER ANY THEORY OF LIABILITY.**

23      Above and beyond Plaintiffs' registration deficiencies, the Complaint suffers

24 from multiple pleading defects that require its dismissal.  In order for a complaint for

25 copyright infringement to survive a motion to dismiss, it must:

26      (1)    identify the particular copyrighted works that were infringed;

27      (2)    link the alleged infringement of particular works with particular

28         defendants alleged to have infringed them; and

(3)     allege conduct that, if proven, would support claims for infringement. *See* Part II(A), *infra*.  Plaintiffs have failed to satisfy any of these pleading requirements.

Nowhere do Plaintiffs identify specified copyrighted works that were allegedly infringed, link specific instances of alleged infringement with particular Carriers, or allege facts constituting infringement of any copyrighted works.  Plaintiffs' expansive and vague exemplary list of works does not identify the allegedly infringed works or the specific subset of those works that each individual Carrier is accused of infringing or how and when each work was infringed.  Nor do the Complaint's core allegations—*i.e.*, that the Carriers (1) created technology to allow their subscribers and others to exchange MMS messages over their wireless networks and charge money for the use of those networks, but (2) do not pay copyright owners whose works may be included in those MMS messages [¶¶ 17, 24-25, 28-30, 38, 40]—state a viable claim for copyright infringement under any theory of liability.  Indeed, the Complaint fails to allege <u>any</u> facts that would allow the Court to determine that <u>anyone</u>, let alone the Carriers, violated any exclusive right of Plaintiffs set forth in section 106 of the Copyright Act.  To the contrary, the Complaint demonstrates that the transmission of Luvdarts over the Carriers' networks was the very use contemplated and authorized by Plaintiffs.  The Court should therefore dismiss Plaintiffs' Complaint forthwith.

**A.     <u>The Complaint Should Be Dismissed Because Plaintiffs Have Failed To Allege Particular Acts Of Infringement Of Particular Copyrighted Works By Particular Carriers</u>.**

"[A] complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929, 944 (2007) (citation, quotation marks, and emphasis omitted); *see* FED. R. CIV. P. 8(a)(2).  A mere "formulaic recitation of the elements" is insufficient to

survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, 167 L. Ed. 2d at 934; *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1954, 173 L. Ed. 2d 868, 889 (2009) ("Rule 8 does not empower respondent to plead the bare elements of his cause of action . . . and expect his complaint to survive a motion to dismiss."). Plaintiffs must provide some "factual enhancement" to establish beyond a mere possibility that they are entitled to relief. *Twombly*, 550 U.S. at 557-58, 127 S. Ct. at 1966, 167 L. Ed. 2d at 934; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").

To plead a claim for copyright infringement, a plaintiff must plead, *inter alia*, which particular work is the subject of a copyright claim and how, when, and by what acts the work was infringed. *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005) (finding that plaintiff had pleaded insufficient facts where "[t]he Complaint does not identify exactly which works Defendants infringed"); *see Bespaq Corp. v. Haoshen Trading Co.*, Case No. 04-3698, 2005 WL 14841, at *2 (N.D. Cal. Jan. 3, 2005) (granting defendant's motion to dismiss where "BESPAQ does not identify which preexisting works in the registered catalog have been infringed by the defendants"); *Gee v. CBS, Inc.*, 471 F. Supp. 600, 643-44 (E.D. Pa. 1979) ("To be sufficient under Rule 8 a claim of infringement must state, [i]nter alia, which specific original work is the subject of the copyright claim, that plaintiff owns the copyright, that the work in question has been registered in compliance with the statute and by what acts and during what time defendant has infringed the copyright."), *aff'd*, 612 F.2d 572 (3d Cir. 1979); *Plunket v. Doyle*, Case No. 99 CIV. 11006, 2001 WL 175252, at *4, 2001 Copr. L. Dec. (CCH) ¶ 28,237 (S.D.N.Y. 2001) (plaintiff must plead "which specific original works are the subject of the copyright claim" and "by what acts during what time the defendant infringed the copyright").

Where a plaintiff alleges that multiple defendants infringed its copyright, the complaint must "allege specific acts of infringement <u>by each defendant</u>." *Taylor v. IBM*, 54 F. Appx. 794, 2002 WL 31845220, at *1 (5th Cir. 2002) (emphasis added); *see also Home Design Servs., Inc. v. David Weekley Homes, LLC*, Case No. 06- 350, 2007 WL 1080001, at *3, 2007 Copr. L. Dec. (CCH) ¶ 29,356 (M.D. Fla. Apr. 9, 2007) (granting defendants' motion to dismiss where "[t]he First Amended Complaint ma[de] no distinction between the conduct of the thirteen defendants" and "fail[ed] to notify each individual defendant of the actions that led to their joinder to the litigation"); *see Livnat v. Lavi*, Case No. 96 CIV. 4967, 1997 WL 563799, at *2, 44 U.S.P.Q.2d (BNA) 1379, 1381 (S.D.N.Y. 1997) (allegations as to different defendants are not "rendered sufficient merely by lumping those defendants together with Amlon, who was directly responsible for the publication of the photographs.").

Plaintiffs have completely failed to meet any of these pleading standards. Nowhere do Plaintiffs identify specified copyrighted works that were allegedly infringed, identify when or how they were infringed, or link specific instances of alleged infringement with particular Carriers.[11] As a result, the Carriers have not been given notice of what, exactly, they are supposed to have done that would give rise to copyright infringement liability.

This fundamental lack of proper notice is exacerbated by Plaintiffs' total failure to identify what, exactly, is copyrighted and allegedly has been infringed. The Exhibit "A" Plaintiffs append to their Complaint allegedly identifies Plaintiffs' copyrighted works. Plaintiffs label it: "Luvdarts LLC Copyrighted Titles Generating MMS Data Revenue." But they then call it merely an "exemplary list of infringed

---

[11] As to the requirement that Plaintiffs state what each Carrier is supposed to have done, Plaintiffs do not distinguish between the Carriers individually, but instead only level allegations against all of them collectively, claiming, for example, that they "profited from the distribution and publication of these copyrighted works to their customers as they charged for each transfer/transmission and publication." [¶ 28; *see also* ¶ 38.]

works" that is "non-exhaustive and includes only a portion of Plaintiffs' works that were infringed." [¶ 23, and Ex. A thereto.] That list is 83 pages long and contains over 2,000 coded titles or labels, such as "YoMama Pt1.3g2" and "ChineseBd4Frd_001.3g2," that do nothing to show what those titles or labels represent or how or when they were infringed. Plaintiffs' Complaint fails to meet the most basic of pleading and notice standards. It should be dismissed.

**B.**     **The Complaint Should Be Dismissed Because It Fails To Identify Any Conduct By Anyone That Would Support A Claim For Either Direct Copyright Infringement Or Secondary Liability For Another's Infringement.**

To the extent that Plaintiffs do allege actual conduct rather than naked legal conclusions, the alleged conduct does not constitute copyright infringement or support any claim against the Carriers under either a theory of direct infringement or secondary liability.

The Copyright Act grants to the copyright owner (in relevant part) a delineated set of exclusive rights "to do or to authorize any of the following":

    (1)     "to reproduce the copyrighted work in copies or phonorecords";

    (2)     "to prepare derivative works based upon the copyrighted works";

    (3)     "to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease or lending";

    (4)     "to perform the copyrighted work publicly"; and

    (5)     "to display the copyrighted work publicly."

17 U.S.C. § 106. One who, without the authorization of the copyright owner, <u>actually does</u> any of the acts reserved to the Copyright Owner by section 106 may be a <u>direct</u> infringer (assuming no other defense applies). "A direct infringer has thus been characterized as one who 'trespasses into [the copyright owner's] exclusive domain' established in § 106, subject to the limitations of §§ 107 through 118." *CoStar Group, Inc. v. Loopnet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004) (quoting *Sony Corp. v.*

*Universal City Studios, Inc.*, 464 U.S. 417, 433, 104 S. Ct. 774, 784, 78 L. Ed. 2d 574, 587 (1984)).  The Copyright Act only expressly describes "the party who <u>actually engages</u> in infringing conduct—the one who directly violates the prohibitions." *Id.* at 550 (emphasis in original); *see Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 130 (2d Cir. 2008) ("The question [relevant to a determination of direct liability] is <u>who</u> made this copy."  (emphasis in original)), *cert. denied sub nom Cable News Network, Inc. v. CSC Holdings, Inc.*, __ U.S. __, 129 S. Ct. 2890, 174 L. Ed. 2d 595 (2009).

Similarly, although the Copyright Act does not explicitly provide for secondary liability, the law recognizes that liability may be imposed, in appropriate cases, on parties that provide the means, facilities, or equipment with which third parties "do" an act that violates a copyright owner's exclusive rights.  *See*, *e.g.*, *Sony Corp.*, 464 U.S. at 435, 104 S. Ct. at 785, 78 L. Ed. 2d at 588; *CoStar*, 373 F.3d at 550; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).  To impose secondary liability, however, there must have been direct infringement by another.  To impose vicarious liability, there must additionally have been the right and ability to supervise and control direct infringement by another.

In this case, Plaintiffs have failed to allege conduct that would support liability under theories of either direct infringement or secondary liability.  For this reason alone, the Complaint should be dismissed.

> ### 1. <u>The Complaint fails to state a claim of direct copyright infringement because it does not and cannot allege that the Carriers themselves did any act that violates an exclusive right of Plaintiffs as copyright owners.</u>

Plaintiffs have failed to allege any conduct by any of the Carriers that would support a claim for direct infringement.  Even reading the Complaint most generously to Plaintiffs, Plaintiffs nowhere allege that the Carriers actually "do" any of the acts

reserved to the copyright owner by the Copyright Act. Rather, the Complaint alleges that the Carriers "have enabled" and "encouraged" others to do things by creating what Plaintiffs call an "MMS file-sharing network." [¶¶ 14, 17, 24.][12] Similarly, it alleges that the Carriers "knowingly facilitated, promoted and willfully provided the means for its users to distribute and publish" Plaintiffs' works. [¶ 30.] These allegations do not state a claim for direct infringement.

Even assuming that some third party uses the Carriers' systems to infringe Plaintiffs' copyrights (which, as shown below, Plaintiffs have not sufficiently alleged), developing and providing a system that enables others to infringe, or that facilitates, promotes, or provides the means for others to infringe, does not, itself, give rise to direct liability for infringement because that conduct, by itself, does not constitute any of the acts listed in section 106 of the Copyright Act. In the seminal case of *Religious Technology Center v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1368 (N.D. Cal. 1995), the court held that an Internet bulletin board operator was not directly liable for infringement because it "did not take any affirmative action that directly resulted in copying plaintiffs' works other than by installing and maintaining a system whereby software automatically forwards messages received from subscribers onto the Usenet, and temporarily stores copies on its system." The court observed that the operator had not "initiated the copying" and that the "systems can operate without any human intervention." *Id.* The court reasoned that as a condition of direct infringement "there should still be some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party." *Id.* at 1370.

---

[12] The Complaint also spills substantial ink alleging that the Carriers have profited from the operation of their MMS services and have not paid Plaintiffs. [¶¶ 14, 15, 17, 20, 21, 24, 25, 28, 29, 30, 31,] But earning money is not one of the exclusive rights reserved by section 106 to a copyright owner. 17 U.S.C. § 106. Earning money without copyright infringement is not unlawful and does not convert non-infringing conduct into infringement.

Courts within this Circuit have consistently endorsed the reasoning of *Netcom*. For example, *Netcom*'s volitional conduct standard was explicitly adopted in a case where a USENET newsgroup was sued for temporarily storing infringing posts on its servers. *Ellison v. Robertson*, 189 F. Supp. 2d 1051, 1057 (C.D. Cal. 2002), *rev'd in part on other grounds*, 357 F.3d 1072 (9th Cir. 2004). In that case, the court specifically "agree[d] with the analysis of the court in *Netcom*" and held that "direct infringement liability should be limited to those users . . . who are responsible for the actual copying." *Id*. Indeed, on appeal, the plaintiff abandoned his claim for direct infringement in the face of the district court's ruling. *See Ellison*, 357 F.3d at 1076 n.4. Similarly, in a case involving Google's caching of content, the court held that "when a user requests a Web page contained in the Google cache by clicking on a 'Cached' link, it is the user, not Google, who creates and downloads a copy of the cached Web page. Google is passive in this process. Google's computers respond automatically to the user's request . . . . The automated, non-volitional conduct by Google in response to a user's request does not constitute direct infringement under the Copyright Act." *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006).[13]

*Netcom's* analysis of direct liability has also been explicitly followed by the only two courts of appeals, the Second and Fourth Circuits, to address the issue of whether one who provides a system for use by others may be a direct infringer. Both courts concluded that "*Netcom* made a particularly rational interpretation of § 106

---

[13] Two nearly identical cases within this Circuit involving video games posted to bulletin board services likewise found *Netcom* "persuasive" and held that the defendants were not liable for direct infringement because they did not "directly cause[] the copying." *Sega Enters. Ltd. v. MAPHIA*, 948 F. Supp. 923, 932 (N.D. Cal. 1996); *Sega Enters. Ltd. v. Sabella*, No. C 93-04260 CW, 1996 WL 780560, at **6-7, 1997 Copr. L. Dec. (CCH) ¶ 27,648 (N.D. Cal. Dec. 18, 1996). Another court has similarly found that Google was not liable for caching and providing content to users on request due to the absence of volitional conduct. *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 497 (E.D. Pa. 2006) ("When an ISP automatically and temporarily stores data without human intervention so that the system can operate and transmit data to its users, the necessary element of volition is missing.").

when it concluded that a person had to engage in volitional conduct—specifically the act constituting infringement—to become a direct infringer." *CoStar*, 373 F.3d at 551; *see Cartoon Network*, 536 F.3d at 131.

In *CoStar*, the Fourth Circuit was presented with a claim of direct infringement against the operator of a web hosting service that allowed its subscribers to post commercial real estate listings that included copyrighted photographs of the properties. *CoStar*, 373 F.3d at 546-47. The court examined the Copyright Act and relevant case law and determined that "the owner and manager of a system used by others who are violating [plaintiff's] copyrights . . . is not directly liable for copyright infringement." *Id.* at 546. It reasoned:

> To establish direct liability under §§ 501 and 106 of the Act, something
> more must be shown than mere ownership of a machine used by others
> to make illegal copies. There must be actual infringing conduct with a
> nexus sufficiently close and causal to the illegal copying that one could
> conclude that the machine owner himself trespassed on the exclusive
> domain of the copyright owner. The *Netcom* court described this nexus
> as requiring some aspect of volition or causation . . . . [¶] To conclude
> that . . . persons are copyright infringers simply because they are
> involved in the ownership, operation, or maintenance of a transmission
> facility that automatically records material—copyrighted or not—would
> miss the thrust of the protections afforded by the Copyright Act.

*Id.* at 550-51.

Most recently, the Second Circuit considered an in-network television recording capability provided by a cable system operator that permitted subscribers, by pressing the right buttons, to direct the company's servers to record programming specifically for that customer. The devices functioned much like a home set-top box DVR, except that the recording remained on the cable operator's devices. *Cartoon Network*, 536 F.3d at 130-31. The court followed both *Netcom* and *CoStar* and held

that "volitional conduct is an important element of direct liability" and that "copies produced by the RS-DVR system are 'made' by the RS-DVR customer, and Cablevision's contribution to this reproduction by providing the system does not warrant the imposition of direct liability." *Id.* at 131, 133. The court found that *Netcom's* "reasoning and conclusions, consistent with the precedents of this court and the Supreme Court, and with the text of the Copyright Act, transcend the Internet." *Id.* at 131, 133.

The absolute absence of any allegation of volitional conduct in this case is striking. The Complaint alleges, at most, that the Carriers established a system and network that <u>others</u> use to transmit messages to one another. The Complaint does not allege that any <u>Carrier</u> actually has "done" any act that directly infringes any right under copyright. Plaintiffs instead have placed the formulaic label of "Copyright Infringement" on a claim that does not sound in direct infringement, but, if at all, under secondary liability.

### 2. <u>The Complaint fails to state a claim of secondary liability for copyright infringement because it does not and cannot allege that anyone engaged in direct infringement and fails to allege additional essential elements for secondary liability.</u>

Plaintiffs' Complaint does purport to state a claim for secondary liability, namely, liability under the doctrine of "Vicarious Copyright Infringement." But the Complaint fails to allege any facts that support a vicarious liability claim for two independent reasons, each of which requires dismissal of the Complaint.[14] *First*, Plaintiffs fail to allege any direct infringement by any third party for which they seek

---

[14] Plaintiffs' "First Claim for Relief" does not expressly assert secondary liability. The "Second Claim for Relief," based on the same core conduct, is entitled "Vicarious Copyright Infringement."

to hold Carriers liable.  *Second*, they fail to allege other essential elements for vicarious liability.  Either ground requires dismissal.

### a. <u>Plaintiffs fail to allege direct infringement by any third party for which the Carriers may be liable.</u>

It is axiomatic that "[s]econdary liability for copyright infringement does not exist in the absence of direct infringement by a third party."  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001); *accord Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) ("As a threshold matter, before we examine Perfect 10's claim that Google is secondarily liable, Perfect 10 must establish that there has been direct infringement by third parties."); *Matthew Bender & Co., Inc. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998) ("For a defendant to be held contributorily or vicariously liable, a direct infringement must have occurred."  (quotation omitted)).

In this case, the Complaint is wholly devoid of any allegation of direct infringement by any third party—not the distributors of their content, the customers who purchase their content to send to their friends, or any recipient of a Luvdart.  The failure to allege direct infringement by someone is fatal to any claim against the Carriers under any theory of secondary liability.

If anything, the Complaint makes clear that the distribution of Luvdarts over wireless networks is <u>not</u> infringing.  Such distribution is not only authorized by Plaintiffs—it is the very purpose for which Luvdarts were created.  Plaintiffs admit in their Complaint that they designed their "MMS content" as "greeting card style messages" that they began to distribute in 2008. [¶¶ 15, 16.]  They further admit that "Luvdarts LLC Produces <u>Copyrighted AudioVisual Works Optimized for Mobile Networks</u>."  [Compl., at 4:3-4 (emphasis added).]  Plaintiffs also allege that "[o]ne of the distinct and unique features of this MMS content is <u>the ability for these AudioVisual Works to be sent from a mobile device directly to another mobile device</u>, person to person, peer2peer, mobile2mobile or received by mobile devices

directly in the same manner." [*Id.* ¶ 14.]  The Complaint makes clear that Plaintiffs themselves have authorized entities to sell Luvdarts for distribution over wireless networks.  [*Id.* ("Client A downloads a Bible Luvdart <u>from an entity that has contracted with Luvdarts to distribute its products.  The download is sent to Client A's phone</u> in an MMS format."  (emphasis added)).]  In other words, Plaintiffs have built their business on the sale and distribution of Luvdarts over wireless networks. Such authorized distribution of Plaintiffs' Luvdarts over wireless networks cannot constitute direct infringement, nor have Plaintiffs alleged that it is.  This, in and of itself, is fatal to Plaintiffs' claim of secondary liability.

The Luvdarts' website is even more explicit, stating that "Luvdarts are <u>multimedia messages (MMS) created for mobile2mobilesharing</u>," [RJN, Item No. 1, Ex. 1 (emphasis added)], and that for Luvdarts campaign purchasers, "<u>We do grant the right for users of our services to share the content we create for them with others as desired</u>."  [RJN, Item No. 3, Ex. 3 (emphasis added).]  In other words, when wireless customers purchase a "luvdart" and include it in an MMS message that they send to a friend, they are doing exactly what they paid Plaintiffs for the right to do and exactly what Plaintiffs authorized them to do.  That is not copyright infringement.

### b. Plaintiffs fail to allege an additional essential element of vicarious copyright liability.

Plaintiffs' failure to plead that any user of the Carriers' networks has directly infringed any of Plaintiffs' works is only one fatal flaw in their "vicarious liability" claim.  The claim fails for a second, independent reason:  Plaintiffs have failed even to allege—much less plausibly plead—one of the core elements of such a claim, namely, that the Carriers have the right and ability to control the (unpled) infringing conduct.

The Ninth Circuit has held:  "To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing

activity." *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007) (footnote and citation omitted). On the first prong of this test, "to succeed in imposing vicarious liability, a plaintiff must establish that the defendant exercises the requisite control over the direct infringer." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). "[A] defendant exercises control over a direct infringer when he has "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Id.*; *accord Adobe Systems Inc. v. Canus Prodn's, Inc.,* 173 F. Supp. 1044, 1053-55 (C.D. Cal. 2001) (Pregerson, J.) (analyzing defendant's lack of practical ability to control the infringing conduct).

Plaintiffs here have failed to allege even the basic elements of any claim for vicarious liability, much less facts that could push a claim into "the realm of plausible liability." *Twombly*, 550 U.S. at 557 n.5, 127 S. Ct. at 1966 n.5, 167 L. Ed. 2d at 935 n.5. Plaintiffs do not allege that any Carrier has the legal right or practical ability to stop or limit any directly infringing conduct. Indeed, the words "right and ability" and "stop and limit" do not even appear in the Complaint. Even if those words were in the Complaint, they would not cure its deficiency. The words are simply "labels and conclusions." *Id.* at 555 (quotations omitted). What Plaintiffs ultimately are missing are any <u>facts</u> that would make their claim plausible.

Plaintiffs allege only that the Carriers "enabled the transfer/transmission and publication of this copyright protected content via mobile devices by building and implementing a peer to peer file sharing network with the dedicated purpose of enabling end users to share multimedia files via this MMS network" and that the Carriers "allowed the distribution of" these files. [¶¶ 17, 38.] These wholly conclusory allegations about "enabl[ing]" "transfer" and "transmission" or "building and implementing" a network do not speak at all to the question whether any Carrier has any legal right or practical ability to do anything about infringing conduct that the Complaint does not even identify. On the contrary, the Complaint fairly read indicates that millions upon millions of MMS messages pass through the Carriers'

networks at the direction and control of the people who originate and send or receive them.  The Complaint does not remotely suggest where there is an infringement of any of Plaintiffs' works in any of these transmissions.  Even if Plaintiffs could get over that hurdle, the Complaint does not even superficially—much less plausibly—allege any facts about how any Carrier could have either the legal or practical ability to stop or limit any such activity.

Ninth Circuit law is clear that a Court can and should dismiss a claim for vicarious liability where Plaintiffs fail to plead the facts that would be necessary to make out such a claim.  *See Perfect 10 v. Visa*, 494 F.3d at 802-06 (affirming dismissal with prejudice of vicarious liability claim for failure to allege facts supporting right and ability to control prong).  Plaintiffs have not come close to pleading such a claim here, and Count II of the Complaint should be dismissed.

## III.  PLAINTIFFS' CLAIM FOR "CONSTRUCTIVE TRUST/ACCOUNTING" SHOULD BE DISMISSED BECAUSE IT IDENTIFIES A REMEDY, NOT AN INDEPENDENT CLAIM, AND IN ANY EVENT IS PREEMPTED BY THE COPYRIGHT ACT.

There is no cause of action for constructive trust under California law.  Rather, constructive trust is merely a remedy.  *Stansfield v. Starkey*, 220 Cal. App. 3d 59, 76 (1990) ("In their third amended complaint appellants alleged, as causes of action, a resulting trust and a constructive trust.  But neither is a cause of action, only a remedy." (internal citations omitted)); *Kenneally v. Bank of Nova Scotia*, Case No. 09- 2039, __ F. Supp. 2d __, 2010 WL 1734955, at *13 (S.D. Cal. Apr. 28, 2010) (dismissing plaintiff's purported constructive trust claim because, under California law, "[a] constructive trust is not an independent cause of action but merely a type of remedy" (internal quotations omitted)); *McCoy v. Scantlin*, Case No. 04-371, 2004 WL 5502111, at *4 (C.D. Cal. June 1, 2004) (dismissing plaintiff's purported constructive trust claim because "[u]nder California law constructive trust is a remedy, not a cause of action").

Plaintiffs themselves implicitly recognize as much. The totality of their purported "claim" is:

> 46. Defendants hold those commercial profits and personal gains which have accrued to them as a result of infringement and other wrongful acts described herein as constructive trustees of those commercial profits and personal gains, for the benefit of Plaintiffs.

> 47. Plaintiffs seek an accounting of said funds, and an order declaring that Defendants hold said funds in trust for Plaintiffs.

This remedy masquerading as a claim should be dismissed.

Even if a claim for constructive trust existed, Plaintiffs still could not assert it, as it would be preempted by the Copyright Act. *See* 17 U.S.C. § 301(a); *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998) ("A state law cause of action is preempted by the Copyright Act if two elements are present. First, the rights that a plaintiff asserts under state law must be 'rights that are equivalent' to those protected by the Copyright Act . . . . Second, the work involved must fall within the 'subject matter' of the Copyright Act . . . .").

As to the first element, Plaintiffs' purported "constructive trust/accounting" claim is explicitly based on Plaintiffs' copyright infringement claims and seeks to protect equivalent rights. Plaintiffs merely seek monies from the Carriers allegedly obtained "as a result of infringement." [¶ 46 (emphasis added).] *See Laws v. Sony Music Entertainment*, 448 F.3d 1134, 1144 (9th Cir. 2006) ("[A] right which is the 'equivalent to copyright' is one that is infringed by the mere act of reproduction.").

As to the second element, Plaintiffs' purported claim does nothing more than seek to recover "commercial profits and personal gains" accrued "as a result of [the] infringement" pleaded earlier in their Complaint. [¶ 46.] In other words, Plaintiffs seek to use a state law remedy merely to supplement Plaintiffs' rights under the

Copyright Act. Plaintiffs' purported claim falls squarely within the scope of section 301 and is preempted.[15]

## **CONCLUSION**

For all of the foregoing reasons, the Carriers respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety. Because the defects in Plaintiffs' Complaint are so fundamental to the merits of Plaintiffs' claims and Plaintiffs are incapable of curing them, the Complaint should be dismissed without leave to amend.

Dated: October 20, 2010      KILPATRICK STOCKTON LLP
                             JOSEPH PETERSEN (*pro hac vice* application to be
                             submitted)
                             GREGORY M. JACOBS, Cal. Bar No. 263154


                             By _____*s/ Gregory M. Jacobs*_____
                                          GREGORY M. JACOBS
                                Attorneys for Defendant AT&T MOBILITY, LLC

Dated: October 20, 2010      MUNGER TOLLES & OLSON LLP
                             KELLY M. KLAUS, Cal. Bar No. 161091


                             By _____*s/ Kelly M. Klaus*_____
                                          KELLY M. KLAUS
                                     Attorneys for Defendant
                                VERIZON WIRELESS TELECOM, INC.

---

[15] *See Falcon Enters., Inc. v. Nobel Devs., Inc.*, Case No. 06-1404, 2007 WL 737347, at *3 (W.D. Wash. Mar. 5, 2007) ("Plaintiffs' claims for constructive trust and accounting are equivalent to the rights and remedies provided by the Copyright Act. As such, they are preempted as well." (internal citations omitted)); *Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1241 (C.D. Cal. 1987) ("[T]he facts alleged in support of separate causes of action for both the accounting and the constructive trust claims are rooted primarily on contentions that defendants infringed on plaintiffs' copyrighted work. Plaintiffs['] separate causes of action for accounting and constructive trust are therefore preempted.").

| | |
|---|---|
| 1 | Dated:  October 20, 2010 |
| 2 | |

1  Dated:  October 20, 2010  SHEPPARD MULLIN RICHTER & HAMPTON LLP
KENT R. RAYGOR
2  FRED R. PUGLISI

3  By _____ *s/ Kent R. Raygor*
KENT R. RAYGOR
4  Attorneys for Defendant SPRINT SPECTRUM LP

5

6  Dated:  October 20, 2010  WILEY REIN LLP
BRUCE G. JOSEPH  (*pro hac vice* application to be
submitted)
7  ANTHONY H. SON, Cal. Bar No. 190478

8  By _____ *s/ Anthony H. Son*
ANTHONY H. SON
9  Attorneys for Defendant T-MOBILE USA, INC.