KILPATRICK STOCKTON LLP
JOSEPH PETERSEN (*pro hac vice* application submitted)
31 West 52nd Street, 14th Floor
New York, New York  10019
Telephone:  (212) 775-8700; Fax: (212) 775-8815
E-mail: jpetersen@kilpatrickstockton.com
Attorneys for Defendant AT&T MOBILITY, LLC

MUNGER TOLLES & OLSON LLP
KELLY M. KLAUS, Cal. Bar No. 161091
355 South Grand Avenue, 35th Floor
Los Angeles California  90071-1560
Telephone: (213) 683-9100; Fax: (213) 683-4038
E-mail: kelly.klaus@mto.com
Attorneys for Defendant CELLCO PARTNERSHIP
d/b/a VERIZON WIRELESS

SHEPPARD MULLIN RICHTER & HAMPTON LLP
KENT R. RAYGOR, Cal. Bar No. 117224
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6017
Telephone: (310) 228-3700; Fax: (310) 228-3701
E-mail: kraygor@sheppardmullin.com
Attorneys for Defendant SPRINT SPECTRUM LP

WILEY REIN LLP
BRUCE G. JOSEPH (admitted *pro hac vice*)
1776 K Street NW
Washington, D.C.  20006
Telephone: (202) 719-7258; Fax: (202) 719-7049
E-mail: bjoseph@wileyrein.com
Attorneys for Defendant T-MOBILE USA, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LUVDARTS LLC, a California limited liability company; and DAVIS-REUSS, INC. dba DigiPie, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY, LLC, a Delaware limited liability company; VERIZON WIRELESS TELECOM, INC., a Delaware corporation; SPRINT NEXTEL CORPORATION, a Kansas for profit corporation; T-MOBILE USA, INC., a Delaware corporation,<br><br>Defendants. | Case No. CV 10-5442 DDP (RZx)<br><br>**(1) NOTICE OF MOTION AND MOTION OF ALL DEFENDANTS TO DISMISS THIS ACTION IN ITS ENTIRETY [FED. R. CIV. P. 12(b)(6)]; AND**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing<br>Date:             February 14, 2011<br>Time:            10:00 a.m. |

Courtroom:        3 (Spring Street)

[*Request For Judicial Notice and Proposed Order Submitted Concurrently Herewith*]

Complaint filed:  July 23, 2010

First Amended Complaint filed: November 8, 2010

TO THE ABOVE-CAPTIONED COURT AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 14, 2011, at 10:00 a.m., or as soon as possible thereafter as counsel can be heard in Courtroom 3 of the United States Courthouse, 312 North Spring Street, Los Angeles, California 90012, before the Honorable Dean D. Pregerson, defendants AT&T Mobility, LLC ("**AT&T**"),[1] Cellco Partnership d/b/a Verizon Wireless ("**Verizon**"), Sprint Spectrum LP ("**Sprint**"), and T-Mobile USA, Inc. ("**T-Mobile**")[2] (collectively, "**the Carriers**") will and hereby do move for an order dismissing Plaintiffs' *First Amended Complaint* ("**FAC**") in its entirety, without leave to amend.

This motion is made on the ground that none of the purported claims for relief asserted in Plaintiffs' FAC states a claim upon which relief can be granted. Therefore, the Carriers ask that Plaintiffs' FAC be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, all pleadings and other documents concerning this matter contained in the Court's file, those matters of which this Court may take judicial notice, and such further evidence and oral argument as may be presented at the hearing on this Motion.

---

[1] Now erroneously renamed as defendant "AT&T Wireless Services Inc." in the FAC.

[2] Now erroneously renamed as defendant "T-Mobile, USA" in the FAC.

This Motion is made following the conference of counsel pursuant to C.D. CAL. LOCAL RULE 7-3 that took place on December 16, 2010.

Dated:  December 22, 2010    KILPATRICK STOCKTON LLP
JOSEPH PETERSEN (*pro hac vice* application submitted)

LEOPOLD PETRICH & SMITH
LOUIS P. PETRICH, Cal. Bar No. 38161
2049 Century Park East, Suite 3110
Los Angeles, California  90067
Telephone:  (310) 277-3333
Facsimile:   (310) 277-7444
E-mail:       lpetrich@lpsla.com

By _____
              *s/ Louis P. Petrich*
LOUIS P. PETRICH
Attorneys for Defendant AT&T MOBILITY, LLC

Dated:  December 22, 2010    MUNGER TOLLES & OLSON LLP
KELLY M. KLAUS, Cal. Bar No. 161091

By _____
              *s/ Kelly M. Klaus*
KELLY M. KLAUS
Attorneys for Defendant CELLCO
PARTNERSHIP d/b/a VERIZON WIRELESS

Dated:  December 22, 2010    SHEPPARD MULLIN RICHTER & HAMPTON LLP
KENT R. RAYGOR, Cal. Bar No. 117224
FRED R. PUGLISI, Cal. Bar No. 121822

By _____
              *s/ Kent R. Raygor*
KENT R. RAYGOR
Attorneys for Defendant SPRINT SPECTRUM LP

Dated:  December 22, 2010    WILEY REIN LLP
BRUCE G. JOSEPH  (admitted *pro hac vice*)
ANTHONY H. SON, Cal. Bar No. 190478

By _____
              *s/ Bruce G. Joseph*
BRUCE G. JOSEPH
Attorneys for Defendant T-MOBILE USA, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

INTRODUCTION AND SUMMARY ................................................................ 1

    A.    The Carriers' Multimedia Messaging Service ("MMS") ................. 2

    B.    Plaintiffs' Business ........................................................................ 3

    C.    Plaintiffs' Copyright Registrations .............................................. 4

    D.    Plaintiffs' Amended Complaint .................................................... 4

ARGUMENT ................................................................................................... 5

I.    PLAINTIFFS DO NOT HAVE VALID COPYRIGHT
REGISTRATIONS FOR THE ALLEGEDLY INFRINGED WORKS. ........ 5

    A.    Plaintiffs' "Catalogs" Do Not Qualify For Group Registration. .......... 6

    B.    The Registrations Fail To Satisfy The Requirements For A
"Single Unpublished Collection." .................................................. 6

II.    THE FAC FAILS TO ALLEGE FACTS ESSENTIAL TO A CLAIM
FOR COPYRIGHT INFRINGEMENT UNDER EITHER OF
PLAINTIFFS' ASSERTED THEORIES OF SECONDARY
LIABILITY. ........................................................................................... 7

    A.    Plaintiffs Must – But Fail To – Allege Particular Acts Of
Infringement Of Particular Copyrighted Works For Which Any
Particular Carrier May Be Liable. ................................................ 8

    B.    The FAC Fails To Identify Any Conduct By The Carriers That
Plausibly Supports A Claim For Secondary Liability. ................. 12

        1.    The FAC Fails To State A Claim For Inducement Of
Copyright Infringement. ....................................................... 12

        2.    Plaintiffs Still Fail To Allege Facts Necessary To Support
The Essential "Right and Ability To Control" Element Of
Vicarious Copyright Liability. ............................................... 15

            a.    Plaintiffs' Hypothetical "System Of
Accountability" Presumes Liability And Is
Irrelevant To Establishing That The Carriers Have
The Right And Ability To Control Infringing
Conduct. ....................................................................... 16

            b.    Plaintiffs' Allegation That The Carriers Could And
Should Redesign Their Networks To Police The
Infringement Of Plaintiffs' Works Is Legally
Baseless. ....................................................................... 17

III.    PLAINTIFFS' UNFAIR COMPETITION CLAIM SHOULD BE
DISMISSED. ........................................................................................ 19

    A.    Plaintiffs' Claim Is Preempted By The Copyright Act. ................. 19

    B.    Plaintiffs Lack UCL Standing. .................................................... 21

CONCLUSION ............................................................................................. 23

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Adobe Sys. Inc. v. Canus Prods., Inc.*,
    173 F. Supp. 2d 1044 (C.D. Cal. 2001)..........................................................15

*Ashcroft v. Iqbal*,
    __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .............................8, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).............8, 11, 12, 13

*Bespaq Corp. v. Haoshen Trading Co.*,
    No. 04-3698, 2005 WL 14841 (N.D. Cal. Jan. 3, 2005)..................................9

*Bouchat v. Bon-Ton Dept. Stores, Inc.*
    506 F.3d 315 (4th Cir. 2007)...........................................................................23

*Brown v. S. Fla. Fishing Extreme, Inc.*,
    No. 08-20678, 2008 WL 2597938 (S.D. Fla. June 27, 2008).........................6

*Capcom Co., Ltd. v. The MKR Group, Inc.*,
    No. 08-0904, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) .........................21

*Cipes v. Mikasa, Inc.*,
    346 F. Supp. 2d 371 (D. Mass. 2004) ..............................................................7

*Cosmetic Ideas, Inc. v. IAC/InteractiveCorp*,
    606 F.3d 612 (9th Cir. 2010)............................................................................5

*Del Madera Props. v. Rhodes and Gardner, Inc.*,
    820 F.2d 973 (9th Cir. 1987)..........................................................................20

*Determined Prods., Inc. v. Koster*,
    No. 92-1697, 1993 WL 120463 (N.D. Cal. Apr. 13, 1993)............................7

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
    423 F. Supp. 2d 173 (S.D.N.Y. 2006)..............................................................3

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001)..........................................................................19

*Experexchange, Inc. v. Doculex, Inc.*,
    No. 08-03875, 2009 WL 3837275 (N.D. Cal. Nov. 16, 2009) ......................21

*Gee v. CBS, Inc.*,
    471 F. Supp. 600 (E.D. Pa. 1979) ....................................................................8

*Gonzalez v. Drew Industries Inc.*,
    No. 06-08233, 2010 WL 3894791 (C.D. Cal. Sept. 30, 2010) ......................22

**TABLE OF AUTHORITIES**
(continued)

Page

*Granse v. Brown Photo Co.*,
No. 3-80-338, 1985 WL 26033, 1986 Copr. L. Dec. (CCH)
¶ 25,964(D. Minn. July 1, 1985) .................................................................... 7

*Grundberg v. Upjohn Co.*,
137 F.R.D. 372 (D. Utah 1991) ................................................................ 6, 7

*Home Design Servs., Inc. v. David Weekley Homes, LLC*,
No. 06- 350, 2007 WL 1080001, 2007 Copr. L. Dec. (CCH)
¶ 29,356 (M.D. Fla. Apr. 9, 2007) .............................................................. 9

*Kay Berry, Inc. v. Taylor Gifts, Inc.*,
421 F.3d 199 (3d Cir. 2005) ......................................................................... 6

*Kodadek v. MTV Networks, Inc.*,
152 F.3d 1209 (9th Cir. 1998) .................................................................. 19

*L.A. Printex Indus., Inc. v. Aeropostale*,
No. 08-07085, 2010 WL 2813800 (C.D. Cal. May 5, 2010) ...................... 5, 6

*Livnat v. Lavi*,
No. 96 Civ. 4967,1997 WL 563799, 44 U.S.P.Q.2d 1379
(S.D.N.Y. Sept. 9, 1997) ............................................................................. 9

*Mack v. S. Bay Beer Distribs., Inc.*,
798 F.2d 1279 (9th Cir. 1986) ..................................................................... 6

*McLaren v. Chico's FAS, Inc.*,
No. 10 Civ. 2481, 2010 WL 4615772 (S.D.N.Y. Nov. 9, 2010) .................... 5

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
___ F .3d ___, No. 09-15932, 2010 WL 5141269
(9th Cir. Dec. 14, 2010) ............................................................................. 9

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) ............. 1, 12, 13, 14

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ....................................................................... 8

*Navy Seals v. Associated Press*,
413 F. Supp. 2d 1136 (S.D. Cal. 2005) ........................................................ 8

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) ....................................................................... 5

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ........................................................... 9, 15, 18

*Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*,
494 F.3d 788 (9th Cir. 2007) ............................................................... 15, 19

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Plunket v. Doyle,*
   Case No. 99 Civ. 11006, 2001 WL 175252, 2001

4
   Copr. L. Dec. (CCH) ¶ 28,237 (S.D.N.Y. Feb. 22, 2001) ................................. 9

5

*Sybersound Records, Inc. v. UAV Corp.,*
   517 F.3d 1137 (9th Cir. 2008) ..................................................................... 21

6

*Taylor v. IBM,*

7
   No. 02-10391, 2002 WL 31845220, 54 F. App'x 794
   (5th Cir. Dec. 12, 2002) ......................................................................... 6, 9

8

*Walker v. GEICO Gen. Ins. Co.,*

9
   558 F.3d 1025 (9th Cir. 2009) ..................................................................... 22

10

*Walker v. USAA Cas. Ins. Co.,*
   474 F. Supp. 2d 1168 (E.D. Cal. 2007) .......................................................... 22

11

*Xerox Corp. v. Apple Computer, Inc.,*

12
   734 F. Supp. 1542 (N.D. Cal. 1990) ............................................................. 21

13

STATE CASES

14

*Buckland v. Threshold Enters. Ltd.,*
   155 Cal. App. 4th 798, 66 Cal. Rptr. 3d 543 (2007) ........................................ 22

15

*Day v. AT&T Corp.,*

16
   63 Cal. App. 4th 325, 74 Cal. Rptr. 2d 55 (1998) ........................................... 22

17

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29 (2003) ........................................ 21, 22

18

*Pineda v. Bank of Am., N.A.,*

19
   50 Cal. 4th 1389, 117 Cal. Rptr. 3d 377 (2010) ............................................. 22

20

FEDERAL STATUTES

21

17 U.S.C. § 101 ..................................................................................................... 4

22

17 U.S.C. § 102(a)(6) ........................................................................................... 20

23

17 U.S.C. § 301 ................................................................................................. 2, 19

24

17 U.S.C. § 1201 .................................................................................................. 18

25

STATE STATUTES

26

Cal. Bus. & Prof. Code § 17200 .................................................................. passim

27

Cal. Bus. & Prof. Code § 17203 ........................................................................ 21

28

**TABLE OF AUTHORITIES**
(continued)

Page

<u>REGULATIONS</u>

37 C.F.R. § 202.3 ..................................................................................................5-6

<u>OTHER AUTHORITIES</u>

Daniel Ralph and Paul Graham, MMS: TECHNOLOGIES, USAGE AND BUSINESS
MODELS (John Wiley & Sons Ltd. 2004)..........................................................3

S. Rep. No. 105-190 (1998)..................................................................................18

**MEMORANDUM OF POINTS AND AUTHORITIES**

<u>INTRODUCTION AND SUMMARY</u>

Plaintiffs' First Amended Complaint ("FAC"), filed in response to a motion to dismiss that Plaintiffs did not even attempt to oppose, continues to press meritless copyright claims and a preempted (and independently deficient) section 17200 claim, all of which are subject to dismissal under Rule 12(b)(6).  The FAC alleges that in 2002 the Carriers created networks for transferring pictures and other multimedia messages, which Plaintiffs characterize as "amazing" and a "great step forward."  More than five years later, Plaintiffs decided to design and deploy products ("Luvdarts") specifically intended to be transferred across those networks.  The FAC alleges that Plaintiffs want some Luvdarts to be transferred "once," and others of which Plaintiffs intend for "mass sharing," and that Plaintiffs are now unhappy that some of their customers allegedly violate some (but not all) of Plaintiffs' terms of use by forwarding their products to others across the Carriers' networks.

None of these allegations comes close to making out a claim for secondary copyright liability, whether styled as inducement of infringement, per *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005), or vicarious infringement.  As to inducement, Plaintiffs simply parrot the Supreme Court's <u>conclusions</u> about what the *Grokster* defendants actually did to induce infringement, but plead absolutely no <u>facts</u> that suggest any Carrier did anything to design its network in order to induce customers to infringe Plaintiffs' copyrights.  That deficiency is not surprising since, by Plaintiffs' own allegations, Plaintiffs did not even design Luvdarts for sharing on the Carriers' networks until many years after the Carriers established their networks.  In fact, the only parties that are alleged ever to have induced anyone to send a Luvdart across the Carriers' networks are <u>Plaintiffs</u>.

Plaintiffs' vicarious infringement claim fails for like reasons. The crux of Plaintiffs' claim is that the Carriers should be required to redesign their networks to create a right and ability to control the transfer of Luvdarts. No case ever has said that the operator of a general purpose technology has to retrofit its network to serve the demands of someone who creates a product for the very purpose of having it disseminated across that network.

The only other thing that is "new" in the FAC is a section 17200 claim, which simply restates the copyright allegations, and so is preempted, 17 U.S.C. § 301; in any event, it fails to allege the loss of property subject to restitution, a requirement for standing to assert a non-preempted claim. Setting aside what is new – and legally untenable – the FAC fails even to attempt to overcome the numerous other deficiencies the Carriers identified in their original motion to dismiss. Plaintiffs have failed to correct their defective copyright registrations; and they still fail to allege any specific direct infringement, which is required for secondary copyright liability. Plaintiffs have demonstrated that further pleading will not create a valid claim where none exists. The FAC should be dismissed with prejudice.

## FACTUAL BACKGROUND

### A.   The Carriers' Multimedia Messaging Service ("MMS")

The FAC alleges infringement of Plaintiffs' "mobile multimedia messaging content," which wireless users send to each other's cell phones across MMS networks. [FAC ¶¶ 14-15.] The FAC specifically alleges that the Carriers started deploying their MMS networks around 2002, as an outgrowth of "SMS," or "short messaging system." [*Id*. ¶ 25.] SMS, as its name suggests, is a standard for short-message transfers – *i.e.*, "texting." [*Id*.] MMS supports longer messages, allowing a wireless user to send text, photographs, and audiovisual content to other cell

phone users.[3]  Plaintiffs themselves describe MMS as "a great step forward for mobile networks and the people that use it," and "truly amazing, akin to rubbing a magic lantern and getting three wishes."  [*Id*. ¶¶ 40, 64.]

### B.   Plaintiffs' Business

Plaintiffs do not allege that any commercial content existed for MMS when, in 2002, the Carriers deployed their networks.  Far from it.  Plaintiffs instead claim that in 2007 – fully five years after the Carriers designed and deployed the networks – Plaintiffs became "pioneers" in developing such content.  [FAC ¶ 19.]

Plaintiffs call their content "Luvdarts," and say they started with "greeting card style messages with text, graphics, video and musical materials."  [*Id*.]  Plaintiffs allege that they use several models to sell "Luvdarts," all of which have in common Plaintiffs' desire that Luvdarts be "<u>shared</u>" by wireless users.  [*Id*. ¶¶ 20-22 (emphasis added); *see also* Request for Judicial Notice ("**RJN**"), Item No. 1, Ex. 1 (www.luvdarts.com:  "Luvdarts are multimedia messages (MMS) <u>created for mobile2mobilesharing</u>." (emphasis added).][4]  Plaintiffs allege that they or their distributors use written terms or notices to try to limit customers from sharing certain Luvdarts more than "once."  [FAC ¶¶ 20-21.]  However, Plaintiffs also allege that other of their Luvdarts offerings expressly "promote the <u>mass sharing</u> of the copyrighted content."[5]  [*Id*. ¶ 22 (emphasis added).]  Plaintiffs nowhere allege that they have used any digital rights management ("DRM") or other technology to limit the transfer of any Luvdart.  [*Id*. ¶¶ 20-22.]

---

[3] The background terms are described summarily in the FAC and in further detail in other sources, including Daniel Ralph and Paul Graham, MMS: TECHNOLOGIES, USAGE AND BUSINESS MODELS 36 (John Wiley & Sons Ltd. 2004).

[4] The Court may take judicial notice of Plaintiffs' factual descriptions on their own website of their products and means of distribution.  FED. R. EVID. 201(b); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006).

[5] Plaintiffs' website confirms this promotion of mass sharing of the Luvdarts Campaign content:  Luvdarts informs campaign purchasers that "Luvdarts LLC creates MMS (multimedia messages) that may be shared on mobile networks . . . . We do grant the right for users of our services to share the content we create for them with others as desired."  [RJN Ex. 2.]

### C.   Plaintiffs' Copyright Registrations

Plaintiffs identify two copyright Registrations that purportedly cover some or all of the hundreds of Luvdarts claimed to be on the "non-exhaustive" list of infringed works.  [*See* FAC ¶ 8 & Ex. A; RJN Ex. 3 (Report on Copyright Filing).]  Both Registrations are for audiovisual works, the first ("3g Luvdarts Catalog I 2008 - 2009") having an effective date of January 14, 2010, and the second ("3g Luvdarts Catalog II Jan 2010 - June 2010") an effective date of August 23, 2010.  [*See* RJN Exs. 4 & 5.]

Although Plaintiffs allege that they have distributed (*i.e.*, published) Luvdarts [FAC ¶¶ 14, 20-22],[6] the Registrations actually claim to be for <u>unpublished</u> works.[7] [RJN Exs. 4 & 5.]  Plaintiffs' Registrations specifically state that "some files previously published" are excluded from the copyright claim [*id.*], but Plaintiffs nowhere identify the unpublished works intended to be covered by the Registrations.

### D.   Plaintiffs' Amended Complaint

The FAC alleges three claims:  (1) that the Carriers "are liable for inducing the infringements by Luvdart users" because they "designed, deployed and participated in technology which allows for and encourages the free transfer and thus infringement of Plaintiff's copyrighted material" [FAC ¶ 46]; (2) that the Carriers are vicariously liable for the infringement of Luvdarts, either because the Carriers have not (a) created "a system of accountability and fair compensation for MMS copyright holders" [*id.* ¶¶ 41, 58] or (b) retrofitted their long-deployed networks to establish "a metadata system of digital rights management" for the

---

[6] "Publication" is "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending.  The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." 17 U.S.C. § 101.

[7] The copyright registration numbers for the Registrations are PAu-3-476-804 and PAu-3-490-330.  The "u" indicates the Registrations are for unpublished works.

purpose of tracking Plaintiffs' MMS content [*id.* ¶¶ 41, 58]; and (3) that the Carriers are liable for unfair competition, Cal. Bus. & Prof. Code § 17200, based on "the conduct described above . . . violating plaintiffs' rights in the MMS Content[,]" *i.e.*, copyright infringement [*id.* ¶ 68.].[8]

## ARGUMENT

## I.   PLAINTIFFS DO NOT HAVE VALID COPYRIGHT REGISTRATIONS FOR THE ALLEGEDLY INFRINGED WORKS.

To state a claim under copyright, Plaintiffs must show that the Copyright Office received a valid application, or subsequently issued a valid registration, for each work allegedly infringed.  *See Cosmetic Ideas, Inc. v. IAC/InteractiveCorp*, 606 F.3d 612, 615-21 (9th Cir. 2010).  The Registrations, which are the basis for Plaintiffs' claims, cover multiple alleged works.  They are a valid basis for asserting a claim only if they qualify as: (1) a group registration of related works; or (2) a single work registration if the works were included in a "single unpublished collection" or, if published, a "single unit of publication."  37 C.F.R. § 202.3(b)(4)-(10); *L.A. Printex Indus., Inc. v. Aeropostale*, No. 08-07085, 2010 WL 2813800, at *4-6 (C.D. Cal. May 5, 2010) (Pregerson, J.); *see also McLaren v. Chico's FAS, Inc.*, No. 10 Civ. 2481, 2010 WL 4615772, at *1-2 (S.D.N.Y. Nov. 9, 2010).  The Registrations are invalid because Plaintiffs did not satisfy the prerequisites for either category.[9]

---

[8] The numerous defects discussed herein more than justify dismissal.  For purposes of this Motion, Carriers do not discuss the many other deficiencies and legal issues raised in the FAC, including, but not limited to (1) the applicability of the safe harbor provisions of 17 U.S.C. § 512 that exempt Service Providers from claims for damages and severely limit any claim for an injunction; (2) that punitive damages, which Plaintiffs seek, are not an available remedy under the Copyright Act, *Saregama India Ltd. v. Young*, No. 02-9856, 2003 WL 25769784, at *1 (C.D. Cal. Mar. 11, 2003); and (3) that 17 U.S.C. § 412 bars Plaintiffs from seeking statutory damages or attorneys' fees as to works not properly registered under the statute's timing rules.

[9] The Court may consider the Registrations on this Motion because the FAC necessarily incorporates them, *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), and because they are public records.  *See Mack v. S. Bay Beer Distribs., Inc.*,

### A.   Plaintiffs' "Catalogs" Do Not Qualify For Group Registration.

Audiovisual works – which are the basis for the FAC – do not qualify for group registration.  Group registration is allowed only for automated databases, serials, daily newspapers, contributions to periodicals, daily newsletters, and published photographs.  *See* 37 C.F.R. § 202.3(b)(5)-(10); *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 204 (3d Cir. 2005) (finding registration invalid under group registration provisions because the works did not fit one of the categories enumerated by the Copyright Office); *Aeropostale*, 2010 WL 2813800, at *4 (same).  Hence, the attempt at "catalog" registration fails to satisfy Plaintiffs' registration burden.

### B.   The Registrations Fail To Satisfy The Requirements For A "Single Unpublished Collection."

Undoubtedly recognizing that their "catalogs" of audiovisual works could not qualify for a group registration, Plaintiffs applied to register the two "catalogs" as "single unpublished collection[s]" under 37 C.F.R. § 202.3(b)(4)(i)(A)-(B).  They could not do so, however, because the "catalogs" included – by Plaintiffs' own admission – both published and unpublished elements, and Plaintiffs failed to distinguish between the two.  "In order for the single collection provision to apply, all of the documents must be unpublished . . . ."  *Grundberg v. Upjohn Co.*, 137 F.R.D. 372, 385 (D. Utah 1991) (emphasis added).  In *Grundberg*, the court found a copyright registration for an unpublished collection "fatally defective" in part because some of the elements included in the collection were published.  The court

---

798 F.2d 1279, 1282 (9th Cir. 1986) ("[O]n a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment."); *Brown v. S. Fla. Fishing Extreme, Inc.*, No. 08-20678, 2008 WL 2597938, at *1 (S.D. Fla. June 27, 2008) (considering copyright registrations as public records on motion to dismiss).

concluded that where an applicant deposits both published and unpublished material, at a minimum, the applicant must specifically identify in its application the unpublished collection subject to the registration:

> A copyright claimant may not obtain a valid copyright certificate, and the copyright office may not effectively approve registration for such . . ., where documents sought to be copyrighted are represented to be part of a single collection . . . and where the copyright application provides no reasonable or workable means for determining what documents in fact constitute the "single unpublished collection."

*Id.* at 384-85 (emphasis added).

Here, as in *Grundberg*, Plaintiffs improperly submitted to the Copyright Office deposit materials constituting the allegedly registered works that included both published and unpublished elements without any indication of which elements constitute the "single unpublished collections." [*See* RJN Ex. 4 & 5.] This fundamental registration error requires dismissal of Plaintiffs' infringement claims. *See Determined Prods., Inc. v. Koster*, No. 92-1697, 1993 WL 120463, at *1 (N.D. Cal. Apr. 13, 1993) (dismissing copyright infringement claim because "[w]rongly identifying a number of published individual works as an unpublished collection is a fundamental registration error"); *Cipes v. Mikasa, Inc.*, 346 F. Supp. 2d 371, 374 (D. Mass. 2004); *Granse v. Brown Photo Co.*, No. 3-80-338, 1985 WL 26033, at *16, 1986 Copr. L. Dec. (CCH) ¶ 25,964 (D. Minn. July 1, 1985).

## II.    THE FAC FAILS TO ALLEGE FACTS ESSENTIAL TO A CLAIM FOR COPYRIGHT INFRINGEMENT UNDER EITHER OF PLAINTIFFS' ASSERTED THEORIES OF SECONDARY LIABILITY.

The FAC, like its predecessor, suffers from multiple pleading defects that require dismissal over and above Plaintiffs' defective registration.  While the FAC makes it clear that Plaintiffs do not allege that any Carrier directly infringed any of Plaintiffs' copyrights, Plaintiffs still fail to allege any specific conduct by any third

party that allegedly constitutes direct infringement, or any facts that link any particular infringement to any specific Carrier claimed to be responsible for that infringement, Part II.A, *infra*; or any facts that would make any of the purported secondary liability claims even remotely plausible, Part II.B, *infra*.

### A.   Plaintiffs Must – But Fail To – Allege Particular Acts Of Infringement Of Particular Copyrighted Works For Which Any Particular Carrier May Be Liable.

"[A] complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929, 944 (2007) (citation, quotation marks, and emphasis omitted). A mere "formulaic recitation of the elements" is insufficient to survive a motion to dismiss. *Id*. at 555; *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1954, 173 L. Ed. 2d 868, 889 (2009) ("Rule 8 does not empower respondent to plead the bare elements of his cause of action . . . and expect his complaint to survive a motion to dismiss."); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (noting that "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief").

Plaintiffs attempt to plead claims against the Carriers for secondary copyright liability. Even before getting to the substantive plausibility of Plaintiffs' allegations, the FAC must plead three elements – none of which the FAC in fact does.

First, Plaintiffs must plead, *inter alia*, which particular work is the subject of a copyright claim and how, when, and by what acts the work was infringed. *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005) (complaint pleaded insufficient facts where it did "not identify exactly which works Defendants infringed"); *Gee v. CBS, Inc.*, 471 F. Supp. 600, 643-44 (E.D. Pa. 1979)

("To be sufficient under Rule 8 a claim of infringement must state, [i]nter alia, which specific original work is the subject of the copyright claim, that plaintiff owns the copyright, that the work in question has been registered in compliance with the statute and by what acts and during what time defendant has infringed the copyright."), *aff'd*, 612 F.2d 572 (3d Cir. 1979).[10]

Second, because Plaintiffs allege infringement by multiple Defendants, the FAC must "allege specific acts of infringement by each defendant." *Taylor v. IBM*, No. 02-10391, 2002 WL 31845220, at *1, 54 F. App'x 794, (5th Cir. Dec. 12, 2002) (emphasis added).[11]

Third, because Plaintiffs allege that the Carriers are <u>secondarily</u> liable, they must allege underlying direct infringement for which particular Carriers are liable. *See MDY Indus., LLC v. Blizzard Entm't, Inc.*, __ F .3d __, No. 09-15932, 2010 WL 5141269, at *4 (9th Cir. Dec. 14, 2010) ("To establish secondary infringement, [the plaintiff] must first demonstrate direct infringement.").[12]

---

[10] *See also Bespaq Corp. v. Haoshen Trading Co.*, No. 04-3698, 2005 WL 14841, at *2 (N.D. Cal. Jan. 3, 2005) (granting defendant's motion to dismiss where "BESPAQ does not identify which preexisting works in the registered catalog have been infringed by the defendants"); *Plunket v. Doyle*, Case No. 99 Civ. 11006, 2001 WL 175252, at *4, 2001 Copr. L. Dec. (CCH) ¶ 28,237 (S.D.N.Y. Feb. 22, 2001) (plaintiff must plead "which specific original works are the subject of the copyright claim" and "by what acts during what time the defendant infringed the copyright").

[11] *See also Home Design Servs., Inc. v. David Weekley Homes, LLC*, No. 06- 350, 2007 WL 1080001, at *3, 2007 Copr. L. Dec. (CCH) ¶ 29,356 (M.D. Fla. Apr. 9, 2007) (granting defendants' motion to dismiss where "[t]he First Amended Complaint ma[de] no distinction between the conduct of the thirteen defendants" and "fail[ed] to notify each individual defendant of the actions that led to their joinder to the litigation"); *Livnat v. Lavi*, No. 96 Civ. 4967, 1997 WL 563799, at *2, 44 U.S.P.Q.2d 1379, 1381 (S.D.N.Y. Sept. 9, 1997) (allegations as to different defendants are not "rendered sufficient merely by lumping those defendants together with Amlon, who was directly responsible for the publication of the photographs.").

[12] *See also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) ("As a threshold matter, before we examine Perfect 10's claim that Google is secondarily liable, Perfect 10 must establish that there has been direct infringement by third parties").

Plaintiffs fail to satisfy these threshold pleading requirements.  Paragraphs 29, 32 and the identical paragraphs 45 and 56 are the only paragraphs in the FAC that even come close to discussing the direct infringement on which Plaintiffs claim to rely – but none of these Paragraphs contains the required factual allegations. Paragraphs 29 alleges only that "Plaintiffs" and others witnessed certain unidentified content "showing up" on multiple devices of certain unidentified mobile phone users.  The paragraph is silent as to how and under what circumstances the content "showed up," who, if anyone transmitted it, over what Carrier's network it was transmitted, or if it was transmitted.  Paragraph 32 similarly alleges only that certain unidentified representatives of Plaintiffs, at certain unidentified trade shows, reviewed the mobile devices of certain unidentified mobile phone users, and found examples of certain unidentified content having been sent and received contrary to Plaintiffs' alleged intent. Paragraph 32 is silent as to the particular wireless Carrier or Carriers over whose network the alleged transmissions occurred, or even whether the MMS services involved belonged to a defendant in this case.  Paragraphs 45 and 56 are even more general and conclusory, alleging only that certain unidentified "[i]ndividuals using Defendants services have directly infringed and are directly infringing Plaintiff's copyrights on a daily basis by . . . transmitting via mobile device to mobile device Plaintiff's copyrighted materials to other users whose receipt of said copyrighted materials has not been authorized."  Despite Plaintiffs' assertion that their works are being infringed "on a daily basis" and "on an immense scale" [FAC ¶¶ 45, 56], Plaintiffs fail to plead even a single specific instance of alleged infringement.[13]

---

[13] Plaintiffs' inclusion of 10 new Doe defendants is curious but adds nothing to the specificity of the FAC.  After the Doe defendants are introduced in Paragraph 7, they are never again mentioned.  References throughout the FAC to "Defendants" are clearly directed to wireless carriers and not to individual users of MMS services.  [*See, e.g.*, FAC ¶ 8 (referring to "Defendants" collectively as "Wireless Carriers"); *id.* ¶ 15 (alleging that each of the Defendants "creat[ed] and deploy[ed] a dedicated MMS" system); *id.* ¶ 16 (alleging that "Defendants are providing a sub-

Moreover, nowhere do Plaintiffs even attempt to tie any particular infringement to any defendant Carrier.  Indeed, Plaintiffs speak only of "Carriers" and "Defendants" collectively.  Thus, the Carriers have not been given notice of what, exactly, they are supposed to have done that would give rise to copyright infringement liability.  Nor are they able to examine any specific allegedly infringed works to test Plaintiffs' claims of ownership and authorship.  In short, the FAC contains precisely the kind of muddled, general allegations that *Twombly* and *Iqbal* prohibit.

This fundamental lack of notice is exacerbated by the now admitted allegations that many transmissions of Plaintiffs' "Luvdarts" are authorized by Plaintiffs, including all initial transmissions and many re-transmissions**.**  [*See* FAC ¶¶ 20-22.]  It is further exacerbated by Plaintiffs' total failure to identify what registered works, exactly, have been infringed.  The FAC includes an "Exhibit A," which is described only as "a non-exhaustive list of Plaintiff's titles that are believed to have been publicly distributed via MMS networks in a manner not consistent with the Plaintiff's intentions."  [FAC ¶ 24.]  The list, in fact, is entitled "Luvdarts LLC's Copyright Protected Content – June 2008 to Date," which confirms that it reflects no effort to identify particular infringement.  That list is 84 pages long and includes over 2,000 coded titles or labels, such as "YoMama Pt1" and "ChineseBd4Frd_001," that do nothing to show what those titles or labels represent, which transmissions were authorized, or how or when they were infringed.

In sum, despite having had a second chance to state a claim for copyright infringement, Plaintiffs still have not alleged direct infringement of particular works by third parties in particular cases that is tied to any particular Carrier – each of

---

system"); *id.* ¶ 17 ("Defendants and each of them have grossed billions of dollars").]

which is necessary to sustain Plaintiffs' claims of secondary liability.  Merely alleging "daily" infringement does not remotely satisfy the *Twombly* pleading standard.[14]

**B.    The FAC Fails To Identify Any Conduct By The Carriers That Plausibly Supports A Claim For Secondary Liability.**

**1.    The FAC Fails To State A Claim For Inducement Of Copyright Infringement.**

Plaintiffs strain to claim that the Carriers are liable for inducing infringement of Luvdarts with repeated reference to the situation in *Grokster*.  [FAC ¶¶ 17, 28.] *Grokster*, however, found inducement liability based on clear evidence of "culpable intent" and "a patently illegal objective," 545 U.S. at 934-35, 939-41, that bears zero resemblance to Plaintiffs' allegations.  The *Grokster* defendants operated peer-to-peer services through which users committed "staggering" amounts of copyright infringement, especially of copyrighted music files.  *Grokster*, 545 U.S. at 923. Their intent to induce that infringement through their services was "unmistakable." *Id.* at 940-41.  In particular, the defendants operated their businesses to attract the large base of infringing users of the "notorious" – and enjoined – Napster peer-to-peer service.  *Id.* at 924.  Among other facts demonstrating this intent, "Grokster's" name was derived from Napster; the defendants had created ads appealing to the base of former Napster users (*e.g.*, "'[w]hen the lights went off at Napster . . . where did the users go?'"), *id.* at 924-25; and each defendant "showed itself to be aiming to satisfy a known source of demand for copyright infringement, the market comprising former Napster users."  *Id.* at 939.  While the Court held that such intentional, culpable conduct could give rise to secondary liability, the Court

---

[14] The FAC also spills substantial ink alleging that the Carriers have profited from the operation of their MMS services and have not paid Plaintiffs.  [FAC ¶¶ 15, 16, 17, 23,  25, 27, 42.]   Earning money without copyright infringement is not unlawful and does not convert non-infringing conduct into infringement.

reaffirmed that simply designing or distributing a device that may be used to infringe cannot in and of itself create copyright liability. *See id*. at 932-33 (noting that "the equivocal conduct of selling an item with substantial lawful as well as unlawful uses" cannot be the basis for imputing unlawful intent, a doctrine that "leaves breathing room for innovation and a vigorous commerce") (discussing *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 439-42, 104 S. Ct. 774, 787-789, 78 L. Ed. 2d 574 (1984)).

Plaintiffs try to shoehorn their allegations into the Supreme Court's conclusions concerning the *Grokster* defendants' intent. *Compare* FAC ¶¶ 46-48 with *Grokster*, 545 U.S. at 939-40. All Plaintiffs have done is to "formulaic[ally] recit[e]" elements, which is manifestly insufficient to state a plausible claim. *Twombly*, 550 U.S. at 555. Plaintiffs' attempt to turn paraphrase into plausibility is transparent and deficient.

First, Plaintiffs allege that the Carriers intended to induce infringement because they "designed, deployed and participated in technology which allows for and encourages the free transfer and thus infringement of Plaintiff's copyrighted material via their MMS system." [FAC ¶ 46.] This allegation is irreconcilable with Plaintiffs' admission that when the Carriers designed and deployed their MMS networks – in 2002 – Plaintiffs' MMS products did not even exist; indeed, Plaintiffs do not even allege creating a Luvdart until five years later – in 2007. [*Id*. ¶¶ 19, 25.] The Carriers could not have designed and deployed networks to induce infringement that did not even exist when those networks were deployed. Moreover, Plaintiffs do not allege a single fact suggesting that any Carrier ever intended for anyone to infringe a Luvdarts product. In fact, the only entities alleged to have induced anyone to send Luvdarts across MMS networks are Plaintiffs themselves. [*Id*. ¶¶ 20-22.] The most that Plaintiffs can be said to allege is that the Carriers deployed networks that some users may use to infringe content, even though many other users use it for legitimate and entirely authorized purposes.

That does not make out a claim of inducement liability, or any claim at all. *See Sony* 464 U.S. at 441 n.21 (calling it "extraordinary to suggest" that a technology may be subject to liability "simply because [it] may be used to infringe copyrights").

Second, Plaintiffs allege that the Carriers have induced infringement "by failing to block or to account for the infringing activities" – *i.e.*, to filter unauthorized transmissions of Luvdarts. [FAC ¶ 47.] This allegation foreshadows Plaintiffs' vicarious liability allegations, which fail for reasons discussed below. For purposes of an inducement claim, the allegation is patently insufficient. Plaintiffs obviously included this allegation to parrot the Supreme Court's holding that the *Grokster* defendants' failure "to develop filtering tools" was indicative of their intent to induce. *See Grokster*, 545 U.S. at 939. But Plaintiffs ignore the Court's admonition that:

> in the absence of other evidence of intent, <u>a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement</u>, if the device otherwise was capable of substantial noninfringing uses. Such a holding would tread too close to the *Sony* safe harbor.

*Id*. at 939 n.12 (emphasis added). Here, there are no allegations of evidence of intent. Hence, Plaintiffs' attempt to plead inducement based on failing to filter fails.

Third, and finally, Plaintiffs allege that the Carriers' intent is shown by their "establishing and maintaining a business model that profits directly from the high volume use of Plaintiff's copyrighted MMS material." [FAC ¶ 48.] Again, this is a naked attempt to quote *Grokster's* conclusion, *see* 545 U.S. at 939-40, and again the effort collapses. Plaintiffs do not allege any facts that show the Carriers developed a business model to profit based on the infringement of Luvdarts. As discussed, the contention is nonsensical, given that Luvdarts did not even exist

when the Carriers deployed their networks.  [FAC ¶¶ 19, 25.]  The Carriers'
businesses are alleged to profit from high-volume use, but unlike *Grokster*, there is
not even a plausible contention that those profits depend on high-volume <u>infringing</u>
uses.

In the end, Plaintiffs fail to allege any specific act indicating an intent to
induce infringement of anyone's copyrighted content, least of all "Luvdarts."  The
claim for inducement fails and must be dismissed.

### 2. **Plaintiffs Still Fail To Allege Facts Necessary To Support The Essential "Right and Ability To Control" Element Of Vicarious Copyright Liability.**

The elements of vicarious copyright liability are well established in this
Circuit.  "To state a claim for vicarious copyright infringement, a plaintiff must
allege that the defendant has (1) the right and ability to supervise the infringing
conduct and (2) a direct financial interest in the infringing activity."  *Perfect 10,
Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007) (footnote and
citation omitted); *id.* at 806 ("Because Perfect 10 has failed to show that Defendants
have the right and ability to control the alleged infringing conduct, it has not pled a
viable claim of vicarious liability.").  "[A] defendant exercises control over a direct
infringer when he has both a legal right to stop or limit the directly infringing
conduct, as well as the practical ability to do so."  *Perfect 10, Inc. v. Amazon.com,
Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007); *see also Adobe Sys. Inc. v. Canus Prods.,
Inc.*, 173 F. Supp. 2d 1044, 1054 (C.D. Cal. 2001) (Pregerson, J.) (finding that
operator of computer fairs lacked the practical ability to police vendor booths for
infringing software).

Plaintiffs' original Complaint did not even attempt to allege that the Carriers
have the right and ability to control any directly infringing conduct, which, as the

- 15 -

Carriers pointed out, was fatal to Plaintiffs' vicarious infringement claim.[15]
Although Plaintiffs now mouth the words that the Carriers have "the right and
ability to control and/or supervise the infringing conduct" [FAC ¶ 57], the FAC
includes no allegations that actually support this conclusory legal assertion.  To the
contrary, Plaintiffs merely posit two actions that the Carriers hypothetically <u>could</u>
have taken in designing their system or making payments that allegedly <u>would</u> have
given them this right and ability, thus confirming that the Carriers currently lack
any such right and ability, neither of which comes close to stating a plausible claim.
[FAC ¶¶ 41, 58.]

>     **a.    Plaintiffs' Hypothetical "System Of**
>            **Accountability" Presumes Liability And Is**
>            **Irrelevant To Establishing That The Carriers**
>            **Have The Right And Ability To Control Infringing**
>            **Conduct.**

Plaintiffs' allegation that the Carriers could have established "a system of
accountability and fair compensation for MMS copyright holders" [FAC ¶¶ 41, 58]
says nothing about the Carriers' present right and ability to control the conduct of
putative direct infringers.  Carriers would not be obligated to make payments unless
they are first found to be vicariously liable for infringement.  Carriers cannot,
however, be vicariously liable for infringement absent a right and ability to control
direct infringement by others.  Thus, Plaintiffs' attempt to set up an administrative
system based on an assumption of liability, under which Plaintiffs and others would
be paid, improperly puts the payment cart before the infringement horse and is

---

[15] This failure was not surprising given the massive volume of traffic that traverses
the Carriers' MMS systems and the fact that the overwhelming majority of that
traffic has nothing to do with the alleged infringement of Plaintiffs' copyrights,
including transmissions of the users' own photographs and videos, not to mention
indisputably authorized transmissions of Plaintiffs' own content.

wholly irrelevant to establishing that the Carriers have the right and ability to control direct infringement.

Plaintiffs' motive for filing their complaint and demanding a compensation system without ever establishing that any infringement is occurring becomes more apparent when one observes that the founder of Luvdarts (Max Davis) is also the founder of DataRevenue.Org, the putative paymaster of Plaintiffs' proposed "system of accountability and fair compensation." [*See* FAC Ex. H.][16]  In essence, Plaintiffs seek to extract protection money from the Carriers against liability that does not exist.

> ### b.   Plaintiffs' Allegation That The Carriers Could And Should Redesign Their Networks To Police The Infringement Of Plaintiffs' Works Is Legally Baseless.

Plaintiffs fare no better with their other suggestion that Carriers could and should now redesign their networks with "a metadata system of digital rights management" to control the transfer of Plaintiffs' content.  [FAC ¶¶ 41, 58.]  The FAC itself expressly alleges that Plaintiffs designed their products specifically for transfer across already existing networks.  [*Id*. ¶ 19.]  What Plaintiffs are alleging is not that the Carriers have a present right and ability to control infringing conduct, but that the Carriers should put one in place.  This does not come close to alleging a plausible claim for relief.  There is simply no legal rule – anywhere – that has ever come close to holding that a general purpose technology has to be redesigned or

---

[16] The professed goal of this organization is to make money from the Carriers' MMS networks by establishing itself as the collection and distribution agent for MMS data payments that it claims the wireless carriers should make.  Indeed, the title to one of Plaintiffs' own exhibits describing DataRevenue.Org is "Wireless Carrier Infrastructure:  Why Implementing and Advocating for Data Revenue.Org as a Designated Collective for MMS Data Revenue is Critical."  [FAC Ex. H.]

reprogrammed to block the unauthorized transfer of works that a third party later designed for the express purpose of being transferred with that technology.

On the contrary, the case law makes clear that a defendant's purported right and ability to control must be based on the system that it actually has, not on a plaintiff's preferred method for designing the system. *See Amazon.com*, 508 F.3d at 1174-75 (rejecting Perfect 10's vicarious liability claim based on failure to change system and reasoning that "Google's failure to change its operations to avoid assisting websites to distribute their infringing content" "is not the same as declining to exercise a right and ability to make third-party websites stop their direct infringement"). The Carriers are aware of no court that has ever held the provider of a general purpose technology to be vicariously liable for copyright infringement for failure to design, develop or implement a DRM system.[17]

Plaintiffs' effort to rely on a putative duty to redesign MMS networks is further and fatally undermined by Plaintiffs' admissions that the Carriers' MMS systems were "deployed for public use in or around 2002," that Plaintiffs did not "beg[i]n to distribute their commercial MMS content" until years later, in 2008, and that they created Luvdarts specifically for use on the Carriers' MMS networks. [FAC ¶¶ 19, 25.] As a result, Plaintiffs were well aware of the MMS systems'

---

[17] Plaintiffs' theory that the Carriers are obligated to retrofit their networks with a DRM system for Plaintiffs' works runs counter on its face to the Digital Millennium Copyright Act ("DMCA"). There, Congress identified two classes of technological protection measures that were entitled to protection against circumvention. *See* 17 U.S.C. § 1201. Even as to these measures, Congress made clear that "[n]othing in this section shall require that the design of, or design and selection of parts and components for, a consumer electronics, telecommunications, or computing product provide for a response to any particular technological measure." 17 U.S.C. § 1201(c)(3); *see also* S. Rep. No. 105-190, at 12-13 (1998) ("The Committee was concerned that the provisions of subsections 1201(a)(2) and (b) might be read to mandate that manufacturers of consumer electronics, telecommunications, and computing products design their products and components to respond to particular technological protection measures employed to protect copyrighted works. Subsection [1201(c)(3)] addresses this concern and clarifies that section 1201 does not impose any affirmative design mandates on manufacturers of consumer electronics, telecommunications, and computing products.").

capabilities and limitations for years before they created Luvdarts, and they decided to commercialize and market their product specifically to profit from that product's use and distribution over the Carriers' MMS systems.  Under these circumstances, it was incumbent on Plaintiffs to take the Carriers' MMS systems as they found them; to work within their capabilities and limitations; and, to the extent they deemed necessary to protect their copyrighted content, to implement their own copyright protection measures such as encryption to guard against infringement.

No case has ever held that copyright requires the type of technological mandates demanded by Plaintiffs in their complaint.  To paraphrase the Ninth Circuit, "to find that [the Carriers'] activities fall within the scope of such tests would require a radical and inappropriate expansion of existing principles of secondary liability."  *Visa*, 494 F.3d at 795.  Plaintiffs' FAC falls far short of satisfying vicarious liability pleading principles under governing law as it has long existed.  The copyright claims in the FAC should be dismissed with prejudice.

## III.   PLAINTIFFS' UNFAIR COMPETITION CLAIM SHOULD BE DISMISSED.

### A.   Plaintiffs' Claim Is Preempted By The Copyright Act.

Plaintiffs' claim alleging unfair competition under California Business & Professions Code 17200 (California's "Unfair Competition Law," or "UCL") is preempted by the Copyright Act, which forbids the assertion of any state-created right in works where (1) the works "come within the subject matter of copyright" and (2) the right is "equivalent to" any right protected by the Copyright Act.  17 U.S.C. § 301[18]; *Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1003 (9th Cir. 2001); *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998).

---

[18] Section 301(a) provides in relevant part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as

As to the first element, Plaintiffs allege that that their MMS works are "Motion Picture[s]" or "Audio Visual Works" [FAC ¶ 14], both of which are expressly within the subject matter of copyright.  17 U.S.C. § 102(a)(6) (The "subject matter of copyright" includes "motion pictures and other audiovisual works.").[19]  Indeed, Plaintiffs freely admit that their works fall within the subject matter of copyright.  [FAC ¶ 15 (describing Luvdarts as "Plaintiff's copyright protected works"); *id.* ¶ 24 ("The copyrights in these works are registered with the United States Copyright Office . . . ."); *see also id.* ¶¶ 14, 16, 18, 66.]

As to the second element, "[t]o survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights.  The state claim must have an 'extra element' which changes the nature of the action." *Del Madera Props. v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987) (citations omitted) (overruled on other grounds).

Plaintiffs' unfair competition claim lacks that "extra element."  It is based exclusively on Plaintiffs' allegations of copyright infringement and seeks to protect equivalent rights.  [FAC ¶ 64 (alleging that Carriers "actively deny MMS content creators a method of generating income from their creative, copyrighted material"); *id.* ¶ 65 (accusing Carriers of "allow[ing] the unfettered distribution of copyrighted material); *id.* ¶ 68 ("Through the conduct described above Defendants are violating plaintiffs' rights in the MMS Content . . . ."); *id.* (claiming that Carriers are "unfairly misappropriating Plaintiffs' rights to its content").]

---

specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title.  Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

[19] For purposes of preemption, the scope of the "subject matter" of copyright "is broader than the wing of its protections."  *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1189-90 (C.D. Cal. 2001).

Plaintiffs' wholesale incorporation of their infringement allegations, without additional allegations, fails to provide the requisite "extra element" necessary to save Plaintiffs' state claim from preemption. *See Xerox Corp. v. Apple Computer, Inc.*, 734 F. Supp. 1542, 1550 n.15, 1551 (N.D. Cal. 1990) ("State law claims of unfair competition based on misappropriation of copyrighted material are preempted by the Copyright Act."); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) ("To the extent the improper business act complained of is based on copyright infringement, the claim was properly dismissed because it is preempted."); *Experexchange, Inc. v. Doculex, Inc.*, No. 08-03875, 2009 WL 3837275, at *25 (N.D. Cal. Nov. 16, 2009) (holding plaintiff's Section 17200 claims to be preempted because "all of Plaintiff's state law claims are based on the same alleged conduct" and "on the identical rights asserted in the copyright claims"); *Capcom Co., Ltd. v. The MKR Group, Inc.*, No. 08-0904, 2008 WL 4661479, at *14 (N.D. Cal. Oct. 20, 2008) (same).

Federal law has provided Plaintiffs with an exclusive path for protecting their allegedly copyrighted material. Plaintiffs have chosen that path by pleading infringement. They are not permitted to restate those same claims as a violation of section 17200.

### B.    Plaintiffs Lack UCL Standing.

Plaintiffs also fail to state a UCL claim because they do not – and cannot – plead the type of property loss required to establish UCL standing. The UCL was not intended as a catch-all cause of action, to be pleaded merely as a "kitchen sink" back-up in every complaint alleging damages. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150, 131 Cal. Rptr. 2d 29 (2003). Rather, the UCL permits private plaintiffs to seek only two types of remedies: injunctions to prevent unfair competition, and restitutionary orders "to restore to any person in interest any money or property . . . acquired by means of such unfair competition." CAL. BUS. & PROF. CODE § 17203.

By virtue of the approval of Proposition 64 in 2004, standing under the UCL was significantly narrowed.  To have standing to assert any UCL claim, including one for injunctive relief, a private plaintiff must have both (a) suffered "injury in fact" and (b) "lost money or property as a result of the unfair competition."  *Id.* at §17204; *Walker v. USAA Cas. Ins. Co.,* 474 F. Supp. 2d 1168 (E.D. Cal. 2007), *aff'd sub nom.*, *Walker v. GEICO Gen. Ins. Co.,* 558 F.3d 1025, 1027 (9th Cir. 2009).

The standing requirement of "lost money or property" echoes the remedial authority to "restore[] . . . money or property," and the two provisions are "construed identically."  *Walker*, 474 F. Supp. 2d at 1172 (emphasis added); *id.* ("[T]o have standing to assert any UCL claim, Plaintiff must show either prior possession or a vested legal interest in the money or property allegedly lost.").  The Ninth Circuit expressly approved the reasoning of the district court in *Walker*, rejecting plaintiff's effort to obtain an injunction and holding that "the import of [the UCL standing requirement] is to limit standing to individuals who suffer losses of money or property that are eligible for restitution."  558 F.3d at 1027 (quoting *Buckland v. Threshold Enters. Ltd.,* 155 Cal. App. 4th 798, 66 Cal. Rptr. 3d 543, 557 (2007)).  As a result, to seek any form of UCL relief, a plaintiff must plead a loss of money or property of the type UCL authorizes a court to "restore."  *Walker*, 474 F. Supp. 2d at 1172; *see also Day v. AT&T Corp.,* 63 Cal. App. 4th 325, 338-39, 74 Cal. Rptr. 2d 55 (1998) (observing that term "restore" is narrow and denotes a "return to a person [of] those measurable amounts which are wrongfully taken").[20]

A UCL plaintiff ordinarily must identify "money or property that defendants took directly from plaintiff" so that granting restitution would "restore the status

---

[20] In *Gonzalez v. Drew Industries Inc.*, No. 06-08233, 2010 WL 3894791, at *2 (C.D. Cal. Sept. 30, 2010) (Pregerson, J.), this Court addressed the "injury in fact" aspect of UCL standing.  That decision did not discuss *Walker* or the "lost money or property" prong of Section 17204, which is unique to UCL standing.  The analysis in this section focuses on that unique second prong of UCL standing.

quo." *Korea Supply,* 29 Cal. 4th at 1149; *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 117 Cal. Rptr. 3d 377, 387 (2010). Injuries to be remedied by "compensatory damages" do not support UCL standing or a UCL claim. *Pineda*, 117 Cal. Rptr. 3d at 387 n.14. Nor do injuries subject to remedy by award of a civil penalty. *Korea Supply*, 29 Cal. 4th at 1148-49.

Here, Plaintiffs do not plead that Defendants took and must return their property to restore the status quo. Instead, Plaintiffs assert that third parties (largely Plaintiffs' own customers) have committed a statutory tort – infringing Plaintiffs' copyrights – and that Defendants are secondarily liable for the statutory remedies.[21] That is not the type of property loss necessary to establish UCL standing.

## CONCLUSION

For all of the foregoing reasons, the Carriers respectfully request that this Court dismiss Plaintiffs' FAC in its entirety. Plaintiffs have already taken one opportunity to attempt to salvage their pleading, yet the defects in Plaintiffs' FAC remain fundamental to the merits of Plaintiffs' claims. Given Plaintiffs' failure to cure the foundational deficiencies in their assertions against the Carriers, the FAC should be dismissed without leave to amend.

Dated:  December 22, 2010    KILPATRICK STOCKTON LLP
JOSEPH PETERSEN (*pro hac vice* application submitted)

LEOPOLD PETRICH & SMITH
LOUIS P. PETRICH, Cal. Bar No. 38161
2049 Century Park East, Suite 3110
Los Angeles, California  90067
Telephone:  (310) 277-3333
Facsimile:  (310) 277-7444
E-mail:      lpetrich@lpsla.com

By _____ *s/ Louis P. Petrich*
LOUIS P. PETRICH
Attorneys for Defendant AT&T MOBILITY, LLC

---

[21] Copyright infringement is a "statutory tort." *Bouchat v. Bon-Ton Dept. Stores, Inc.* 506 F.3d 315, 329 (4th Cir. 2007).

Dated:  December 22, 2010      MUNGER TOLLES & OLSON LLP
                               KELLY M. KLAUS, Cal. Bar No. 161091

                               By _____ *s/ Kelly M. Klaus* _____
                                            KELLY M. KLAUS
                                     Attorneys for Defendant CELLCO
                               PARTNERSHIP d/b/a VERIZON WIRELESS


Dated:  December 22, 2010      SHEPPARD MULLIN RICHTER & HAMPTON LLP
                               KENT R. RAYGOR, Cal. Bar No. 117224
                               FRED R. PUGLISI, Cal. Bar No. 121822

                               By _____ *s/ Kent R. Raygor* _____
                                            KENT R. RAYGOR
                                Attorneys for Defendant SPRINT SPECTRUM LP


Dated:  December 22, 2010      WILEY REIN LLP
                               BRUCE G. JOSEPH  (admitted *pro hac vice*)
                               ANTHONY H. SON, Cal. Bar No. 190478

                               By _____ *s/ Bruce G. Joseph* _____
                                            BRUCE G. JOSEPH
                                Attorneys for Defendant T-MOBILE USA, INC.